**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **CORE WIRELESS LICENSING** | ) | |
| **S.A.R.L.** | ) | |
| | ) | **CIVIL ACTION NO. 6:14-cv-00752** |
| **Plaintiff,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) | |
| | ) | |
| **APPLE INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CORE WIRELESS LICENSING S.A.R.L.'S COMPLAINT**
**FOR BREACH OF CONTRACT, DECLARATORY RELIEF,**
**AND PATENT INFRINGEMENT**

Plaintiff, Core Wireless Licensing S.a.r.l. ("Core Wireless"), for its Complaint against Defendant, Apple Inc. ("Apple") alleges:

## THE PARTIES

1.      Core Wireless is a corporation duly organized and existing under the laws of the Grand Duchy of Luxembourg, having a principal place of business at 16, Avenue Pasteur L-2310 Luxembourg.  Core Wireless has a regular and established place of business and does business relating to the patents-in-suit in connection with its wholly-owned subsidiary, Core Wireless Licensing Ltd. ("Core Wireless USA"), a corporation duly organized and existing under the laws of the State of Texas, having a principal place of business at 5601 Granite Parkway, Suite 1300, Plano, TX 75024, which is within the Eastern District of Texas.  All pertinent documents and discovery relevant to this matter either reside at Core Wireless USA's local address or will be produced at that address.  Core Wireless is the owner of record of the patents involved in this action.

2.      Defendant, Apple, is a corporation duly organized and existing under the laws of the State of California, having a principal place of business at 1 Infinite Loop, Cupertino, CA 95014.  Apple's registered agent, registered with the Texas Secretary of State's Office, is CT Corp. System at 1999 Bryan St., Suite 900, Dallas, TX 75201.

3.      Defendant, Apple, is currently litigating several United States patents in this District that are technologically related to the patents-in-suit and which are also owned by Core Wireless.  Proceedings, including court rulings in that case, could have significant influence on this case.  The Court's knowledge of the technology and patents in the pending case (Civil Action No. 6:12-CV-100) will assist the Court substantially in deciding issues in this case.

## JURISDICATION

4.      Certain claims in this action arise under the patent laws of the United States. Accordingly, this Court has subject matter jurisdiction over the patent claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has subject matter jurisdiction over the breach of contract claims pursuant to 28 U.S.C. §§ 1332 and 1367.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizen of a State and citizen or subject of a foreign state.

6.      This Court has subject matter jurisdiction over the declaratory judgment causes of action pursuant to 28 U.S.C. §§ 2201 and/or 2202.  An actual case or controversy has arisen between the parties that is definite and concrete and which touches the legal relations of the parties having adverse legal interests.

7.      This Court has personal jurisdiction over Apple because Apple does business in the State of Texas and in this judicial district and/or has infringed or caused infringement in the State of Texas and in this judicial district.

8.      This Court has personal jurisdiction over Apple because Apple has established minimum contacts with the Eastern District of Texas.  Apple manufactures (directly or indirectly through third party manufacturers) and/or assembles products that are and have been used, offered for sale, sold, and purchased in the Eastern District of Texas.  Apple, directly and/or through its distribution network, places wireless mobile communication devices within the stream of commerce, which stream is directed at this district, with the knowledge and/or understanding that those products will be sold in the State of Texas, including in the Eastern District of Texas.  Jurisdiction over Apple in this matter is also proper inasmuch as Apple has voluntarily submitted itself to the jurisdiction of the courts by commencing litigations within the

State of Texas, by registering with the Texas Secretary of State's office to do business in the State of Texas, and by appointing a registered agent.  Therefore, the exercise of jurisdiction over Apple is appropriate under the applicable jurisdictional statutes and would not offend traditional notions of fair play and substantial justice.

## VENUE

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391and 1400(b) because Apple has committed, and continues to commit, acts of infringement, including providing wireless mobile communication devices that are used, offered for sale, sold, and have been purchased in the State of Texas, including in the Eastern District of Texas.

## FACTUAL ALLEGATIONS

### I.      PATENTS-IN-SUIT

10.      United States Patent No. 5,946,634 ("'634"), entitled *Mobile Communications*, was duly and lawfully issued August 31, 1999.  Core Wireless is the current owner of all rights, title, and interest in and to the '634 patent.  A true and correct copy of the '634 patent is attached hereto as Exhibit 1.

11.      United States Patent No. 6,477,151 ("'151"), entitled *Packet Radio Telephone Services*, was duly and lawfully issued November 5, 2002.  Core Wireless is the current owner of all rights, title, and interest in and to the '151 patent.  A true and correct copy of the '151 patent is attached hereto as Exhibit 2.

12.      United States Patent No. 6,633,536 ("'536"), entitled *Signalling In A Digital Mobile Communications System*, was duly and lawfully issued October 14, 2003.  Core Wireless is the current owner of all rights, title, and interest in and to the '536 patent.  A true and correct copy of the '536 patent is attached hereto as Exhibit 3.

13.     United States Patent No. 7,782,818 ("'818"), entitled *System And Method For Providing A Connection In A Communication Network*, was duly and lawfully issued August 24, 2010.  Core Wireless is the current owner of all rights, title, and interest in and to the '818 patent.  A true and correct copy of the '818 patent is attached hereto as Exhibit 4.

14.     United States Patent No. RE44,828 E ("'828"), entitled *Method and Arrangement For Choosing A Channel Coding And Interleaving Scheme For Certain Types of Packet Data Connections*, was duly and lawfully issued April 8, 2014.  The '828 patent is a reissue of U.S. Patent No. 7,773,708 originally issued August 10, 2010.  Core Wireless is the current owner of all rights, title, and interest in and to the '828 patent.  A true and correct copy of the '828 patent is attached hereto as Exhibit 5.

## II.     CORE WIRELESS'S STANDARD-ESSENTIAL PATENTS

15.     The '634, '151, '536, '818, and '828 patents ("patents-in-suit") are among over 1,200 Standard-Essential Patents owned by Core Wireless.  Core Wireless became the owner of these Standard-Essential Patents on or around September 1, 2011, obtaining all right, title and interest in, to and under the patents-in-suit, including without limitation all legal rights of the original owner of the patents, Nokia Corporation ("Nokia"), and further including enforcement rights.

16.     The patents-in-suit were originally invented by, procured by, or assigned to Nokia, which is and has been a member of the European Telecommunications Standards Institute ("ETSI"), a non-profit Standard Setting Organization headquartered in France.

17.     ETSI is and has been involved in standardization of the most recent generations of mobile communications standards, including Global System for Mobile ("GSM") also known as 2G, GSM improvements known as GSM Packet Radio Service ("GPRS") and Enhanced Data Rates for GSM Evolution, the third generation of GSM technology known as Universal Mobile

Telecommunications System ("UMTS") or 3G, and Long-Term Evolution ("LTE") known as 4G, which is anticipated to become the first global mobile communications standard.

18.     Nokia declared before ETSI that the patents-in-suit are essential to one or more of the mobile communications standards developed or completed by ETSI including without limitation the GSM/GPRS, UMTS, and LTE standards.  As a result, pursuant to ETSI's Intellectual Property Rights ("IPR") Policy, Nokia had an obligation to license the patents-in-suit on fair, reasonable, and non-discriminatory ("FRAND") terms.

19.     Nokia also declared before ETSI that the over 1,200 Standard-Essential Patents owned by Core Wireless are essential to one or more of the mobile communications standards developed or completed by ETSI including without limitation the GSM/GPRS, UMTS, and LTE standards.  Accordingly, Nokia also had an obligation to license those patents on FRAND terms.

20.     Core Wireless, as the present owner of a portfolio of ETSI Standard-Essential Patents, has voluntarily agreed to grant licenses under FRAND terms to willing licensees who negotiate in good faith.  Core Wireless publicly affirmed its ETSI commitments by submitting its own FRAND undertaking to ETSI.

21.     ETSI's IPR Policy Section 3.2 states that IPR holders are to be adequately and fairly rewarded for use of their IPRs in the implementation of standards and technical specifications.  A true and correct copy of ETSI's IPR Policy is attached hereto as Exhibit 6.

## III.   CORE WIRELESS'S ATTEMPTS TO LICENSE APPLE

22.     Apple implements the GSM/GPRS, UMTS, and/or the LTE standards in certain of its wireless mobile communications devices, including, without limitation, Apple's devices marketed and sold within Apple's iPhone and iPad families, further including without limitation Apple's iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S, iPhone 5, iPhone 5C, iPhone 5S, iPhone 6, iPhone 6 Plus, iPad, iPad 2, third and fourth generation iPads, iPad Mini, second

generation iPad Mini, and iPad Air ("Apple Standard-Compliant Products") that infringe one or more of the patent claims involved in this action.

23.     Apple is also a member of ETSI.  As an ETSI member, Apple knows it is required to follow ETSI's IPR Policy in connection with all of its relevant activities.

24.     Core Wireless is informed and believes that Nokia offered Apple a license to the patents-in-suit, and its other Standard-Essential Patents, on FRAND terms at least as early as 2009.  While Apple and Nokia agreed to a license for a subset of Nokia's patents, Apple did not license the rest of Nokia's patents that are now owned by Core Wireless, including the patents-in-suit.

25.     Between at least February 2012 and July 2012, Core Wireless again attempted to negotiate FRAND license terms with Apple related to Core Wireless's Standard-Essential Patents, including the patents-in-suit.  Apple essentially ignored Core Wireless's overtures.

26.     On October 30, 2012 Apple demanded Core Wireless provide Apple with a FRAND offer.  Core Wireless responded, but Apple ignored Core Wireless's response.

27.     On January 30, 2013, Apple again demanded Core Wireless provide Apple with a FRAND offer.  In response, Core Wireless made a specific FRAND royalty rate offer to Apple on February 22, 2013.  Apple ignored Core Wireless's offer.

28.     In April 2013, Core Wireless and Apple attended court-ordered mediation in pending Civil Action No. 6:12-CV-100 (E.D. Tex.) involving the same parties and other of Core Wireless's Standard-Essential Patents.  That mediation was not successful.

29.     On September 27, 2013, Apple sent Core Wireless another demand for a FRAND offer, ignoring Core Wireless's specific FRAND offer made on February 22, 2013.

30.     During 2014, representatives of Core Wireless and Apple have met twice without any success in Apple agreeing to pay for a license to the patents-in-suit or any of Core Wireless's Standard-Essential Patents.

31.     On June 8, 2014, Apple finally responded to Core Wireless's offers with a low-ball counteroffer that was grossly incommensurate with the value of Core Wireless's Standard-Essential Patent portfolio.

32.     On September 9, 2014, Core Wireless and Apple attended court-ordered mediation in pending Civil Action No. 6:12-CV-100 (E.D. Tex.) involving the same parties and other of Core Wireless's Standard-Essential Patents.  That mediation was not successful.

33.     To date, Apple has provided Core Wireless no compensation in return for a license to use the patents-in-suit or any of Core Wireless's Standard-Essential Patents.

### FIRST COUNT
**(Breach of Apple's Contractual Obligations to ETSI)**

34.     Core Wireless incorporates by reference the allegations set forth in Paragraphs 1-33 of this Complaint as though fully set forth herein.

35.     ETSI provides its members with the benefit of being involved in the setting of standards that affect entities involved in providing products and/or services related to mobile communications.  ETSI's activities are closely aligned with market needs and there is wide acceptance of its standards.  Accordingly, mobile communications businesses benefit from ETSI membership by being able to provide input on issues that may have financial impacts on their businesses.

36.     As a condition of receiving the benefits that ETSI provides to its members, ETSI members and affiliates must comply with ETSI's Directives, also known as Bylaws.  ETSI's IPR

Policy is found in Annex 6 of the ETSI Rules of Procedures, making the rights and obligations specified by the IPR Policy binding on all ETSI members and affiliates.

37.     Apple is bound by ETSI's IPR Policy by virtue of its ETSI membership and participation in the organization from which Apple derives a benefit.

38.     ETSI's IPR Policy requires IPR patent holders to be adequately and fairly rewarded for use of their IPRs in the implementation of standards and technical specifications.

39.     ETSI's IPR Policy states that any violation of the Policy by a member, including affiliates, shall be deemed a breach of that member's obligations to ETSI.

40.     Apple's refusal for nearly five years to negotiate in good faith a FRAND rate for Core Wireless's patents-in-suit and its other Standard-Essential Patents is a violation of ETSI's IPR Policy.

41.     Apple has breached its contractual obligations to ETSI, which is causing harm to Core Wireless by failing to financially compensate Core Wireless for its patented technology essential to the standards used by Apple's Standard-Compliant Products.  Such compensation is required by Apple's contract with ETSI.

## SECOND COUNT
**(Breach of Apple's Contractual Obligations to Core Wireless)**

42.     Core Wireless incorporates by reference the allegations set forth in Paragraphs 1-41 of this Complaint as though fully set forth herein.

43.     Apple has taken the position that it is expressly or impliedly licensed to those patents that have been declared essential to an ETSI standard, including the GSM/GPRS, UMTS, and/or the LTE standards.  An example of Apple expressing its position is publicly available at Document 2013-18 filed on October 10, 2012 in Case 5:11-cv-01846-LHK (N.D. Cal.).

44. According to Apple, its alleged license agreements with ETSI IPR holders are subject only to agreement on the terms of a FRAND royalty as compensation to the IPR holder.

45. Accordingly, Apple by its own admissions and actions has entered into an agreement with IPR holders to negotiate a FRAND royalty rate in good faith.  Core Wireless is at least a third party beneficiary of Apple's admitted contractual obligations.

46. Apple has and is continuing to derive the benefit of its alleged license agreement with Core Wireless without fulfilling its end of the bargain with Core Wireless.

47. Apple has accordingly breached its contractual obligations to Core Wireless by unreasonably stalling negotiations for nearly five years and refusing to reasonably respond to Core Wireless's FRAND offer.

48. Apple's breach of its contractual obligations is harming Core Wireless by failing to financially compensate Core Wireless for its patented technology essential to the standards used by Apple's Standard-Compliant Products, despite Apple's acknowledgement that compensation is an element of its contract with Core Wireless.

## THIRD COUNT
### (Declaratory Judgment that Apple Is an Unwilling Licensee)

49. Core Wireless incorporates by reference the allegations set forth in Paragraphs 1-49 of this Complaint as though fully set forth herein.

50. A substantial controversy exists between Core Wireless and Apple of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

51. Core Wireless and Apple have adverse legal interests because Apple continues to use Core Wireless's patented technology without a license, constituting infringement, and without paying for a license Core Wireless has offered and is obligated to provide to Apple.

52.     Core Wireless is also threatened by Apple's legal breach of contract claims in Case No. Case No. 6:12-CV-100 (E.D. Tex.).  A true and correct copy of Apple Inc.'s First Amended Answer, Defenses and First Amended Counterclaims to Core Wireless Licensing S.a.r.l.'s Third Amended Complaint is attached hereto as Exhibit 7.

53.     For nearly five years Apple has demonstrated an unwillingness to negotiate a FRAND royalty rate with Nokia or Core Wireless in good faith by, among other things, unreasonably stalling negotiations and essentially ignoring Core Wireless's FRAND offer.

54.     At the same time, Apple has profited by virtue of its use of Core Wireless's Standard-Essential Patents, including the patents-in-suit, to the detriment of Core Wireless.

55.     The longer Apple is allowed to engage in its infringing activity without consequence or paying for a license, the lower the value of the patents-in-suit and Core Wireless's Standard-Essential Patents may become as licensing assets, at least in part, because the period before each patent expires is decreasing and Apple's known delay provides incentives for other potential licensees to refuse to pay for a license, frustrating Core Wireless's rights pursuant to ETSI's IPR Policy.

56.     As a direct, proximate, and foreseeable result of Apple's refusal to negotiate in good faith a FRAND royalty with Core Wireless or to reasonably respond to Core Wireless's FRAND royalty offer, Core Wireless has and continues to suffer harm, including without limitation by being denied the adequate and fair reward set forth by the ETSI IPR Policy for use of Core Wireless's Standard-Essential Patents and being forced to resolve this matter through unnecessary litigation in which Core Wireless is required to pay what should be unnecessary attorneys' fees and expenses.

57.     Core Wireless has been and will continue to suffer irreparable harm by Apple's refusal to negotiate in good faith as an unwilling licensee, and Core Wireless lacks an adequate remedy at law to compensate for the irreparable harm caused by Apple's five-year hold-out period.

### FOURTH COUNT
**(Declaratory Judgment of a FRAND Royalty Rate
for Core Wireless's Standard-Essential Patents)**

58.     Core Wireless incorporates by reference the allegations set forth in Paragraphs 1-57 of this Complaint as though fully set forth herein.

59.     To the extent Apple is found to be entitled to a license on FRAND terms despite the fact that it is an unwilling licensee and has violated its contractual obligations to ETSI to negotiate for a license in good faith, Core Wireless is entitled at a minimum to a FRAND royalty rate, and Core Wireless seeks the Court's determination of the FRAND royalty rate.

60.     ETSI's Guide on IPRs states in Section 4.3 that national courts of law have the sole authority to resolve IPR disputes.  A true and correct copy of the "ETSI Guide on Intellectual Property Rights (IPRS)," "Version adopted by Board #94 on 19 September 2013" is attached hereto as Exhibit 8.

61.     Core Wireless's rights continue to remain uncertain in the absence of Court intervention.  On the one hand, Core Wireless has an obligation to license its Standard-Essential Patents on FRAND terms, it has made a FRAND licensing offer to Apple, and Apple has refused to accept the offer or further negotiate in good faith.  On the other hand, Core Wireless is entitled to compensation pursuant to ETSI's IPR Policy, which right to compensation even Apple acknowledges.  Unless and until a FRAND royalty rate is determined, Core Wireless continues to be damaged by delayed adjudication of its rights.

62.     The Court's determination of a FRAND royalty rate is specific relief available through a decree of conclusive character.

## FIFTH COUNT
### (Infringement of the '634 patent)

63.     Core Wireless incorporates by reference the allegations set forth in Paragraphs 1-62 of this Complaint as though fully set forth herein.

64.     Core Wireless is informed and believes that it is necessary to practice one or more of the claims of the '634 patent to comply with the requirements of certain standards applicable to mobile communications.  Core Wireless is informed and believes that Apple's Standard-Compliant Products comply with the applicable standards covered by the claims of the '634 patent and therefore infringe claims of the '634 patent.

65.     In violation of 35 U.S.C. § 271(a), Apple is and has been infringing one or more claims of the '634 patent directly by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, without authority, products, including without limitation Apple's Standard-Compliant Products, that are covered by or practice the inventions claimed in the '634 patent.  Apple is infringing claims of the '634 patent literally and/or pursuant to the doctrine of equivalents.

66.     In violation of 35 U.S.C. § 271(b), Apple is and has been infringing one or more of the '634 patent's claims indirectly by inducing the infringement of the '634 patent's claims by third parties, including without limitation manufacturers, resellers, and/or end users of Apple's Standard-Compliant Products, in this District, and elsewhere in the United States.  Direct infringement is the result of activities performed by third parties in relation to Apple's Standard-Compliant Products, including without limitation use of Apple's Standard-Compliant Products.

67.     Apple's affirmative acts of selling Apple's Standard-Compliant Products, causing Apple's Standard-Compliant Products to be manufactured and distributed, and providing instructive materials and information concerning operation and use of Apple's Standard-Compliant Products induced third parties to make or use Apple's Standard-Compliant Products in their normal and customary way to infringe the '634 patent's claims.  By manufacturing, distributing, and selling Apple's Standard-Compliant Products, Apple knowingly and specifically intends third parties to infringe the '634 patent's claims.  Apple knew of the '634 patent, Apple performed affirmative acts that constitute induced infringement, and Apple knew or should have known that those acts would induce actual infringement of one or more of the '634 patent's claims by third parties.

68.     In violation of 35 U.S.C. § 271(c), Apple is and has been infringing one or more of the '634 patent's claims indirectly by contributing to the infringement of the '634 patent's claims by third parties, including without limitation manufacturers, resellers, and/or end users of Apple's Standard-Compliant Products, in this District, and elsewhere in the United States. Direct infringement is the result of activities performed by third parties in relation to Apple's Standard-Compliant Products, including without limitation use of Apple's Standard-Compliant Products.

69.     Apple installs, configures, and sells its Standard-Compliant Products with distinct and separate hardware and/or software components especially made or especially adapted to practice the invention claimed in the '634 patent.  That hardware and/or software is a material part of the invention.  That hardware and/or software is not a staple article or commodity of commerce because it is specifically designed to perform the claimed functionality.  Any other

use of that hardware and/or software would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

70.     A reasonable inference may be drawn from the facts set forth above that Apple is making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, without authority, a component of a patented machine, manufacture, combination or composition, or a material or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of a patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

71.     Core Wireless is informed and believes that at least as early as 2009, Apple was aware of the '634 patent, had knowledge of the infringing nature of its activities, and has nevertheless continued its infringing activities.

72.     Core Wireless is informed and believes that Apple's infringement of the '634 patent has been and continues to be willful entitling Core Wireless to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

73.     Core Wireless is informed and believes that Apple intends to and will continue to directly infringe, induce infringement, and/or contribute to infringement of the '634 patent's claims.

74.     Apple's acts of infringement have caused damages to Core Wireless and Core Wireless is entitled to recover from Apple the damages sustained by Core Wireless as a result of Apple's wrongful acts in an amount subject to proof at trial.

## SIXTH COUNT
### (Infringement of the '151 patent)

75.     Core Wireless incorporates by reference the allegations set forth in Paragraphs 1-74 of this Complaint as though fully set forth herein.

76.     Core Wireless is informed and believes that it is necessary to practice one or more of the claims of the '151 patent to comply with the requirements of certain standards applicable to mobile communications.  Core Wireless is informed and believes that Apple's Standard-Compliant Products comply with the applicable standards covered by the claims of the '151 patent and therefore infringe claims of the '151 patent.

77.     In violation of 35 U.S.C. § 271(a), Apple is and has been infringing one or more claims of the '151 patent directly by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, without authority, products, including without limitation Apple's Standard-Compliant Products, that are covered by or practice the inventions claimed in the '151 patent.  Apple is infringing claims of the '151 patent literally and/or pursuant to the doctrine of equivalents.

78.     In violation of 35 U.S.C. § 271(b), Apple is and has been infringing one or more of the '151 patent's claims indirectly by inducing the infringement of the '151 patent's claims by third parties, including without limitation manufacturers, resellers, and/or end users of Apple's Standard-Compliant Products, in this District, and elsewhere in the United States.  Direct infringement is the result of activities performed by third parties in relation to Apple's Standard-Compliant Products, including without limitation use of Apple's Standard-Compliant Products.

79.     Apple's affirmative acts of selling Apple's Standard-Compliant Products, causing Apple's Standard-Compliant Products to be manufactured and distributed, and providing instructive materials and information concerning operation and use of Apple's Standard-

Compliant Products induced third parties to make or use Apple's Standard-Compliant Products in their normal and customary way to infringe the '151 patent's claims.  By manufacturing, distributing, and selling Apple's Standard-Compliant Products, Apple knowingly and specifically intends third parties to infringe the '151 patent's claims.  Apple knew of the '151 patent, Apple performed affirmative acts that constitute induced infringement, and Apple knew or should have known that those acts would induce actual infringement of one or more of the '151 patent's claims by third parties.

80.     In violation of 35 U.S.C. § 271(c), Apple is and has been infringing one or more of the '151 patent's claims indirectly by contributing to the infringement of the '151 patent's claims by third parties, including without limitation manufacturers, resellers, and/or end users of Apple's Standard-Compliant Products, in this District, and elsewhere in the United States.  Direct infringement is the result of activities performed by third parties in relation to Apple's Standard-Compliant Products, including without limitation use of Apple's Standard-Compliant Products.

81.     Apple installs, configures, and sells its Standard-Compliant Products with distinct and separate hardware and/or software components especially made or especially adapted to practice the invention claimed in the '151 patent.  That hardware and/or software is a material part of the invention.  That hardware and/or software is not a staple article or commodity of commerce because it is specifically designed to perform the claimed functionality.  Any other use of that hardware and/or software would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

82.     A reasonable inference may be drawn from the facts set forth above that Apple is making, using, offering to sell, and/or selling in the United States, and/or importing into the

United States, without authority, a component of a patented machine, manufacture, combination or composition, or a material or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of a patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

83.     Core Wireless is informed and believes that at least as early as 2009, Apple was aware of the '151 patent, had knowledge of the infringing nature of its activities, and has nevertheless continued its infringing activities.

84.     Core Wireless is informed and believes that Apple's infringement of the '151 patent has been and continues to be willful entitling Core Wireless to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

85.     Core Wireless is informed and believes that Apple intends to and will continue to directly infringe, induce infringement, and/or contribute to infringement of the '151 patent's claims.

86.     Apple's acts of infringement have caused damages to Core Wireless and Core Wireless is entitled to recover from Apple the damages sustained by Core Wireless as a result of Apple's wrongful acts in an amount subject to proof at trial.

## SEVENTH COUNT
### (Infringement of the '536 patent)

87.     Core Wireless incorporates by reference the allegations set forth in Paragraphs 1-86 of this Complaint as though fully set forth herein.

88.     Core Wireless is informed and believes that it is necessary to practice one or more of the claims of the '536 patent to comply with the requirements of certain standards applicable

to mobile communications.  Core Wireless is informed and believes that Apple's Standard-Compliant Products comply with the applicable standards covered by the claims of the '536 patent and therefore infringe claims of the '536 patent.

89.     In violation of 35 U.S.C. § 271(a), Apple is and has been infringing one or more claims of the '536 patent directly by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, without authority, products, including without limitation Apple's Standard-Compliant Products, that are covered by or practice the inventions claimed in the '536 patent.  Apple is infringing claims of the '536 patent literally and/or pursuant to the doctrine of equivalents.

90.     In violation of 35 U.S.C. § 271(b), Apple is and has been infringing one or more of the '536 patent's claims indirectly by inducing the infringement of the '536 patent's claims by third parties, including without limitation manufacturers, resellers, and/or end users of Apple's Standard-Compliant Products, in this District, and elsewhere in the United States.  Direct infringement is the result of activities performed by third parties in relation to Apple's Standard-Compliant Products, including without limitation use of Apple's Standard-Compliant Products.

91.     Apple's affirmative acts of selling Apple's Standard-Compliant Products, causing Apple's Standard-Compliant Products to be manufactured and distributed, and providing instructive materials and information concerning operation and use of Apple's Standard-Compliant Products induced third parties to make or use Apple's Standard-Compliant Products in their normal and customary way to infringe the '536 patent's claims.  By manufacturing, distributing, and selling Apple's Standard-Compliant Products, Apple knowingly and specifically intends third parties to infringe the '536 patent's claims.  Apple knew of the '536 patent, Apple performed affirmative acts that constitute induced infringement, and Apple knew

or should have known that those acts would induce actual infringement of one or more of the '536 patent's claims by third parties.

92.     In violation of 35 U.S.C. § 271(c), Apple is and has been infringing one or more of the '536 patent's claims indirectly by contributing to the infringement of the '536 patent's claims by third parties, including without limitation manufacturers, resellers, and/or end users of Apple's Standard-Compliant Products, in this District, and elsewhere in the United States. Direct infringement is the result of activities performed by third parties in relation to Apple's Standard-Compliant Products, including without limitation use of Apple's Standard-Compliant Products.

93.     Apple installs, configures, and sells its Standard-Compliant Products with distinct and separate hardware and/or software components especially made or especially adapted to practice the invention claimed in the '536 patent.  That hardware and/or software is a material part of the invention.  That hardware and/or software is not a staple article or commodity of commerce because it is specifically designed to perform the claimed functionality.  Any other use of that hardware and/or software would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

94.     A reasonable inference may be drawn from the facts set forth above that Apple is making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, without authority, a component of a patented machine, manufacture, combination or composition, or a material or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of a patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

95.     Core Wireless is informed and believes that at least as early as 2009, Apple was aware of the '536 patent, had knowledge of the infringing nature of its activities, and has nevertheless continued its infringing activities.

96.     Core Wireless is informed and believes that Apple's infringement of the '536 patent has been and continues to be willful entitling Core Wireless to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

97.     Core Wireless is informed and believes that Apple intends to and will continue to directly infringe, induce infringement, and/or contribute to infringement of the '536 patent's claims.

98.     Apple's acts of infringement have caused damages to Core Wireless and Core Wireless is entitled to recover from Apple the damages sustained by Core Wireless as a result of Apple's wrongful acts in an amount subject to proof at trial.

## EIGHTH COUNT
### (Infringement of the '818 patent)

99.     Core Wireless incorporates by reference the allegations set forth in Paragraphs 1-98 of this Complaint as though fully set forth herein.

100.     Core Wireless is informed and believes that it is necessary to practice one or more of the claims of the '818 patent to comply with the requirements of certain standards applicable to mobile communications.  Core Wireless is informed and believes that Apple's Standard-Compliant Products comply with the applicable standards covered by the claims of the '818 patent and therefore infringe claims of the '818 patent.

101.     In violation of 35 U.S.C. § 271(a), Apple is and has been infringing one or more claims of the '818 patent directly by making, using, offering to sell, and/or selling in the United

States, and/or importing into the United States, without authority, products, including without limitation Apple's Standard-Compliant Products, that are covered by or practice the inventions claimed in the '818 patent.  Apple is infringing claims of the '818 patent literally and/or pursuant to the doctrine of equivalents.

102.    In violation of 35 U.S.C. § 271(b), Apple is and has been infringing one or more of the '818 patent's claims indirectly by inducing the infringement of the '818 patent's claims by third parties, including without limitation manufacturers, resellers, and/or end users of Apple's Standard-Compliant Products, in this District, and elsewhere in the United States.  Direct infringement is the result of activities performed by third parties in relation to Apple's Standard-Compliant Products, including without limitation use of Apple's Standard-Compliant Products.

103.    Apple's affirmative acts of selling Apple's Standard-Compliant Products, causing Apple's Standard-Compliant Products to be manufactured and distributed, and providing instructive materials and information concerning operation and use of Apple's Standard-Compliant Products induced third parties to make or use Apple's Standard-Compliant Products in their normal and customary way to infringe the '818 patent's claims.  By manufacturing, distributing, and selling Apple's Standard-Compliant Products, Apple knowingly and specifically intends third parties to infringe the '818 patent's claims.  Apple knew of the '818 patent, Apple performed affirmative acts that constitute induced infringement, and Apple knew or should have known that those acts would induce actual infringement of one or more of the '818 patent's claims by third parties.

104.    In violation of 35 U.S.C. § 271(c), Apple is and has been infringing one or more of the '818 patent's claims indirectly by contributing to the infringement of the '818 patent's claims by third parties, including without limitation manufacturers, resellers, and/or end users of

Apple's Standard-Compliant Products, in this District, and elsewhere in the United States. Direct infringement is the result of activities performed by third parties in relation to Apple's Standard-Compliant Products, including without limitation use of Apple's Standard-Compliant Products.

105.    Apple installs, configures, and sells its Standard-Compliant Products with distinct and separate hardware and/or software components especially made or especially adapted to practice the invention claimed in the '818 patent.  That hardware and/or software is a material part of the invention.  That hardware and/or software is not a staple article or commodity of commerce because it is specifically designed to perform the claimed functionality.  Any other use of that hardware and/or software would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

106.    A reasonable inference may be drawn from the facts set forth above that Apple is making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, without authority, a component of a patented machine, manufacture, combination or composition, or a material or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of a patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

107.    Core Wireless is informed and believes that Apple was aware of the '818 patent and/or its application, had knowledge of the infringing nature of its activities, and has nevertheless continued its infringing activities.

108.    Core Wireless is informed and believes that Apple's infringement of the '818 patent has been and continues to be willful entitling Core Wireless to increased damages

pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action

pursuant to 35 U.S.C. § 285.

109.    Core Wireless is informed and believes that Apple intends to and will continue to

directly infringe and/or induce infringement of the '818 patent.

110.    Apple's acts of infringement have caused damages to Core Wireless and Core

Wireless is entitled to recover from Apple the damages sustained by Core Wireless as a result of

Apple's wrongful acts in an amount subject to proof at trial.

## NINTH COUNT
### (Infringement of the '828 patent)

111.    Core Wireless incorporates by reference the allegations set forth in Paragraphs 1-

110 of this Complaint as though fully set forth herein.

112.    Core Wireless is informed and believes that it is necessary to practice one or more

of the claims of the '828 patent to comply with the requirements of certain standards applicable

to mobile communications.  Core Wireless is informed and believes that Apple's Standard-

Compliant Products comply with the applicable standards covered by the claims of the '828

patent and therefore infringe claims of the '828 patent.

113.    In violation of 35 U.S.C. § 271(a), Apple is and has been infringing one or more

claims of the '828 patent directly by making, using, offering to sell, and/or selling in the United

States, and/or importing into the United States, without authority, products, including without

limitation Apple's Standard-Compliant Products, that are covered by or practice the inventions

claimed in the '828 patent.  Apple is infringing claims of the '828 patent literally and/or pursuant

to the doctrine of equivalents.

114.    In violation of 35 U.S.C. § 271(b), Apple is and has been infringing one or more

of the '828 patent's claims indirectly by inducing the infringement of the '828 patent's claims by

third parties, including without limitation manufacturers, resellers, and/or end users of Apple's Standard-Compliant Products, in this District, and elsewhere in the United States.  Direct infringement is the result of activities performed by third parties in relation to Apple's Standard-Compliant Products, including without limitation use of Apple's Standard-Compliant Products.

115.    Apple's affirmative acts of selling Apple's Standard-Compliant Products, causing Apple's Standard-Compliant Products to be manufactured and distributed, and providing instructive materials and information concerning operation and use of Apple's Standard-Compliant Products induced third parties to make or use Apple's Standard-Compliant Products in their normal and customary way to infringe the '828 patent's claims.  By manufacturing, distributing, and selling Apple's Standard-Compliant Products, Apple knowingly and specifically intends third parties to infringe the '828 patent's claims.  Apple knew of the '828 patent, Apple performed affirmative acts that constitute induced infringement, and Apple knew or should have known that those acts would induce actual infringement of one or more of the '828 patent's claims by third parties.   In violation of 35 U.S.C. § 271(c), Apple is and has been infringing one or more of the '828 patent's claims indirectly by contributing to the infringement of the '828 patent's claims by third parties, including without limitation manufacturers, resellers, and/or end users of Apple's Standard-Compliant Products, in this District, and elsewhere in the United States.  Direct infringement is the result of activities performed by third parties in relation to Apple's Standard-Compliant Products, including without limitation use of Apple's Standard-Compliant Products.

116.    Apple installs, configures, and sells its Standard-Compliant Products with distinct and separate hardware and/or software components especially made or especially adapted to practice the invention claimed in the '828 patent.  That hardware and/or software is a material

part of the invention.  That hardware and/or software is not a staple article or commodity of commerce because it is specifically designed to perform the claimed functionality.  Any other use of that hardware and/or software would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

117.     A reasonable inference may be drawn from the facts set forth above that Apple is making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, without authority, a component of a patented machine, manufacture, combination or composition, or a material or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of a patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

118.     Core Wireless is informed and believes that Apple was aware of the predecessor patent to the '828 patent and/or its application, had knowledge of the infringing nature of its activities, and has nevertheless continued its infringing activities.

119.     Core Wireless is informed and believes that Apple's infringement of the '828 patent has been and continues to be willful entitling Core Wireless to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

120.     Core Wireless is informed and believes that Apple intends to and will continue to directly infringe and/or induce infringement of the '828 patent.

121.     Apple's acts of infringement have caused damages to Core Wireless and Core Wireless is entitled to recover from Apple the damages sustained by Core Wireless as a result of Apple's wrongful acts in an amount subject to proof at trial.

## DAMAGES

122.     As a result of Apple's contractual breaches, Core Wireless has suffered damages; however, Core Wireless does not yet know the full extent of those damages and they cannot be ascertained except through discovery and special accounting.  To the fullest extent permitted by law, Core Wireless seeks recovery of all contractual damages to which Core Wireless would be entitled to in law or in equity.

123.     Apple's acts of infringement are and were committed intentionally, knowingly, and with callous disregard of Core Wireless's legitimate rights.  Core Wireless is therefore entitled to and now seeks to recover exemplary damages in an amount not less than the maximum amount permitted by law.

124.     As a result of Apple's acts of infringement, Core Wireless has suffered actual and consequential damages; however, Core Wireless does not yet know the full extent of the infringement and its extent cannot be ascertained except through discovery and special accounting.  To the fullest extent permitted by law, Core Wireless seeks recovery of damages at least for reasonable royalties, unjust enrichment, and benefits received by Apple as a result of using the misappropriated technology.  Core Wireless further seeks any other damages to which Core Wireless would be entitled to in law or in equity.

## ATTORNEYS' FEES

125.     Core Wireless is entitled to recover reasonable and necessary attorneys' fees under applicable law.

## PRAYER FOR RELIEF

Core Wireless respectfully requests that this Honorable Court enter preliminary and final orders, declarations, and judgments against Apple as are necessary to provide Core Wireless with the following relief:

(a)     A judgment that Apple breached its contractual obligations with ETSI.

(b)     A judgment that Apple breached its contractual obligations with Core Wireless.

(c)     All direct and consequential damages stemming from Apple's breaches of its contractual obligations, including without limitation attorneys' fees and litigation expenses;

(d)     A declaration that Apple violated its duty to negotiate in good faith and is an unwilling licensee to Core Wireless's Standard-Essential Patents, including the patents-in-suit;

(e)     A mandatory future royalty payable on each future product sold by Apple that is found to infringe one or more of the patents-in-suit and on all future products which are not colorably different from products found to infringe;

(f)     As a minimum measure of the compensation Core Wireless is entitled to, a declaration of a FRAND royalty rate for Core Wireless's Standard-Essential Patents;

(g)     A judgment that Apple has infringed and/or is infringing one or more claims of the '634 patent;

(h)     A judgment that Apple has infringed and/or is infringing one or more claims of the '151 patent;

(i)     A judgment that Apple has infringed and/or is infringing one or more claims of the '536 patent;

(j)     A judgment that Apple has infringed and/or is infringing one or more claims of the '818 patent;

(k)     A judgment that Apple has infringed and/or is infringing one or more claims of the '828 patent;

(l)     Actual damages;

(m)     Enhanced damages pursuant to 35 U.S.C. § 284;

(n)     Attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise allowed by law;

(o)     Pre-judgment and post-judgment interest as allowed by law;

(p)     Costs of suit;

(q)     All further relief in law or in equity as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule CV-38,

Core Wireless demands a trial by jury of this action.


Dated:  September 10, 2014                              Respectfully Submitted,

By:     */s/ Henry Bunsow*
      Henry Bunsow (California State Bar # 60707)
      Brian A.E. Smith (California State Bar # 188147)
      **BUNSOW, DE MORY, SMITH & ALLISON LLP**
      351 California Street, Suite 200
      San Francisco, CA  94104
      Telephone:  (415) 426-4747
      Facsimile:  (415) 426-4744
      Email:  hbunsow@bdiplaw.com
      Email:  bsmith@bdiplaw.com

      Denise M. De Mory (California State Bar #168076)
      Craig Y. Allison (California State Bar # 161175)
      **BUNSOW, DE MORY, SMITH & ALLISON LLP**
      600 Allerton Street, Suite 101
      Redwood City, CA  94063
      Telephone:  (650) 351-7248
      Facsimile:  (650) 351-7259
      Email:  ddemory@bdiplaw.com
      Email:  callison@bdiplaw.com

      T. John Ward, Jr. (Texas Bar # 00794818)
      Wesley Hill (Texas Bar # 24032294)
      **WARD & SMITH LAW FIRM**
      1127 Judson Road, Suite 220
      Longview, Texas 75601
      Telephone:  (903) 757-6400
      Facsimile:  (903) 757-2323
      Email:  jw@wsfirm.com

Email:  wh@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
CORE WIRELESS LICENSING S.A.R.L.**