**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

CORE WIRELESS LICENSING S.A.R.L.,

     Plaintiff,

     v.

 APPLE, INC.,

     Defendant.

Civil Action No. 6:14-cv-00752

**APPLE INC.'S MOTION TO DISMISS**
**CORE WIRELESS LICENSING S.A.R.L.'S COMPLAINT**

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 1

    A.    Breach Of Contract And Declaratory Judgment Counts................................1

    B.    Claims For Patent Infringement...................................................................2

II.    ISSUES TO BE DECIDED ................................................................................. 3

III.   BACKGROUND ................................................................................................. 4

    A.    Core Wireless's Breach Of Contract And Declaratory Judgment Claims....................4

        1.    Breach Of Contract Claims Previously Asserted In *Core Wireless I* ..................4

        2.    Duplicative Breach Of Contract Claims Asserted In This Case ..........................5

    B.    Core Wireless's Patent Infringement Claims................................................7

IV.    ARGUMENT..................................................................................................... 10

    A.    Core Wireless's Breach Of Contract And Declaratory Judgment Claims
        Justify Dismissal As A Matter of Law..........................................................10

        1.    The Statute Of Limitations Bars Core Wireless's Breach Of Contract And
            Declaratory Judgment Claims.............................................................10

        2.    The Rule Against Claim Splitting Bars Core Wireless's Breach Of
            Contract And Declaratory Judgment Claims. ......................................12

        3.    Core Wireless Has Failed To Plead The Existence Of An Enforceable
            Contractual Obligation That Apple Could Even Breach. ....................14

        4.    Core Wireless's Declaratory Judgment Claims Justify Dismissal For Lack
            Of Standing Under The Declaratory Judgment Act.............................17

    B.    Core Wireless's Patent Infringement Claims Justify Dismissal. ................20

        1.    Core Wireless's Patent Infringement Claims Fail To Plead Facts Sufficient
            To Put Apple On Notice Of Its Accused Infringement......................21

        2.    Core Wireless's Induced Infringement Claims Are Boilerplate
            Allegations. ........................................................................................22

        3.    Core Wireless's Generic Contributory Infringement Claims Justify
            Dismissal............................................................................................26

        4.    Core Wireless's Willful Infringement Claims Are Conclusory.........................28

        5.    Alternatively, If The Court Wishes To Reserve Judgment On This Motion
            Until Core Wireless Serves Its Infringement Contentions Under Local
            Patent Rule 3-1, Apple Respectively Asks The Court To Stay Discovery
            In The Interim. ...................................................................................29

V.     CONCLUSION................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*3D Sys., Inc. v. Formlabs, Inc.*,
No. 13-cv-7973, 2014 WL 1904365 (S.D.N.Y. May 12, 2014) ................................................27

*Achates Reference Pub., Inc. v. Symantec Corp.*,
No. 11-cv-294, 2013 WL 693955 (E.D. Tex. Jan. 10, 2013) .................................................29

*Air Vent, Inc. v. Owens Corning Corp.*,
No. 10-cv-1699, 2011 WL 2601043 (W.D. Pa. June 30, 2011) ......................................23, 28

*Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC*,
No. 13-cv-2011, 2014 WL 3543720 (S.D. Tex. July 14, 2014) .............................................18

*Ameritox, Ltd. v. Aegis Sciences Corp.*,
No. 08-cv-1168, 2009 WL 305874 (N.D. Tex. Feb. 9, 2009) ..........................................12, 14

*Antonini v. Harris Cnty. Appraisal Dist.*,
999 S.W.2d 608 (Tex. App. 1999) .........................................................................................14

*Apple Inc. v. Samsung Elecs. Co.*,
No. 11–cv–01846, 2012 WL 1672493 (N.D. Cal. May 14, 2012) .........................................16

*Artemi Ltd. v. Safe-Strap Co.*,
947 F. Supp. 2d 473 (D.N.J. 2013) ........................................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................2, 20, 22, 28

*Bailey v. Blanton*,
No. 12-01-00191-CV, 2002 WL 1065941 (Tex. App. May 22, 2002) ...................................12

*Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*,
837 S.W.2d 627 (Tex. 1992) ..................................................................................................13

*Beavers v. Metro. Life Ins. Co.*,
566 F.3d 436 (5th Cir. 2009) .................................................................................................11

*Bedrock Computer Techns., LLC v. Softlayer Techs., Inc.*,
No. 09-cv-269, 2010 WL 5175172 (E.D. Tex. Mar. 29, 2010) .............................................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................20, 21, 22, 28

*Clear With Computers, LLC v. Bergdorf Goodman, Inc.*,
No. 09-cv-481, 2010 WL 3155888 (E.D. Tex. Mar. 29, 2010) .............................................23

*DSU Med. Corp. v. JMS Co., Ltd.*,
 471 F.3d 1293 (Fed. Cir. 2006) .......................................................................24

*EnLink Geoenergy Services, Inc. v. Jackson & Sons Drilling & Pump, Inc.*,
 No. 09-cv-03524, 2010 WL 1221861 (N.D. Cal. Mar. 24, 2010) ..........................26

*Eolas Techs., Inc. v. Adobe Sys., Inc.*,
 No. 09-cv-446, 2010 WL 2026627 (E.D. Tex. May 6, 2010) ................................28

*Global-Tech. Appliances, Inc. v. SEB S.A.*,
 131 S. Ct. 2060 (2011) ....................................................................................24

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
 438 F.3d 1354 (Fed. Cir. 2006) .......................................................................28

*Guttmacher Inst. v. McPherson*,
 616 F. Supp. 195 (S.D.N.Y. 1985) ...................................................................19

*Hayes v. Solomon*,
 597 F.2d 958 (5th Cir. 1979) ...........................................................................13

*Hogue v. Royse City*,
 939 F.2d 1249 (5th Cir. 1991) .........................................................................14

*Household Fin. Servs., Inc. v. N. Trade Mortg. Corp.*,
 No. 99-cv-2840, 1999 WL 782072 (N.D. Ill. Sept. 27, 1999) ..............................18

*i4i Ltd. P'ship v. Microsoft Corp.*,
 598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 131 S. Ct. 2238 (2011) ............................26

*In re Boyd Veigel, P.C.*,
 575 F. App'x 393 (5th Cir. 2014) .....................................................................19

*In re Katrina Canal Breaches Litig.*,
 495 F.3d 191 (5th Cir. 2007) .....................................................................15, 16

*In re Seagate Tech., LLC*,
 497 F.3d 1360 (Fed. Cir. 2007)........................................................................28

*InMotion Imagery Techs. v. Brain Damage Films*,
 No. 11-cv-414, 2012 WL 3283371 (E.D. Tex. Aug. 10, 2012)..............................29

*InterDigital Communications, Inc. v. ZTE Corp.*,
 No. 13–cv–00009, 2014 WL 2206218 (D. Del, May 28, 2014)............................19

*Kansa Reinsurance v. Congressional Mortg. Corp.*,
 20 F.3d 1362 (5th Cir. 1994) ...........................................................................11

*Landmark Tech. v. Aeropostale,*
 No. 09-cv-262, 2010 WL 5174954 (E.D. Tex. Mar. 29, 2010) ...............................................22

*MedImmune, Inc. v. Genentech, Inc.,*
 549 U.S. 118 (2007)................................................................................................................17

*Microsoft Corp. v. Motorola, Inc.,*
 No. 10-cv-1823, 2011 WL 11480223 (W.D. Wash. June 1, 2011) ........................................18

*Morse v. Commonwealth Land Title Ins. Co.,*
 No. 12-cv-375, 2013 WL 5372395 (E.D. Tex. Sept. 25, 2013)...............................................14

*Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.,*
 No. 11-cv-229, 2012 WL 9864381 (E.D. Tex. July 27, 2012) ...............................................27

*Priester v. Long Beach Mortg. Co.,*
 No. 10-cv-641, 2011 WL 6116491 (E.D. Tex. Oct. 13, 2011) ...............................................12

*Pustejovsky v. Rapid-Am. Corp.,*
 35 S.W.3d 643 (Tex. 2000).....................................................................................................12

*Realtime Data, LLC v. Stanley,*
 721 F. Supp. 2d 538 (E.D. Tex. 2010) (Davis, J.) .......................................................20, 22, 25

*ReefEdge Networks, LLC v. Juniper Networks, Inc.,*
 No. 13-cv-412, 2014 WL 1217263 (D. Del. Mar. 21, 2014) ..................................................29

*Round Rock Research, LLC v. Oracle Corp.,*
 No. 11-cv-332, 2011 WL 11761563 (E.D. Tex. Oct. 25, 2011) .............................................22

*Schneider Nat'l. Carriers, Inc. v. Bates,*
 147 S.W.3d 264 (Tex. 2004)...................................................................................................12

*Select Retrieval, LLC v. Am. Apparel, LLC,*
 No. 11-cv-2158, 2012 U.S. Dist. LEXIS 40208 (S.D. Cal. Mar. 23, 2012) ...........................22

*Stine v. Stewart,*
 80 S.W.3d 586 (Tex. 2002).....................................................................................................11

*Straight Path IP Grp., Inc. v. Vonage Holdings Corp.,*
 No. 14-cv-502, 2014 WL 3345618 (D.N.J. July 7, 2014) ................................................25, 27

*Superior Indus., LLC v. Thor Global Enters. Ltd.,*
 700 F.3d 1287 (Fed. Cir. 2012)........................................................................................25, 27

*Taylor v. Bailey Tool Mfg. Co.,*
 744 F.3d 944 (5th Cir. 2014) ..................................................................................................11

*Tessler v. NBC Universal, Inc.*,
No. 08-cv-234, 2009 WL 866834 (E.D. Va. Mar. 31, 2009)................................................15

*Tierra Intellectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*,
No. 13-cv-38, 2014 WL 894805 (E.D. Tex. Mar. 4, 2014) ....................................................25

*Transcience Corp. v. Big Time Toys, LLC*,
No. 13-cv-6642, 2014 WL 4827878 (S.D.N.Y. Sept. 23, 2014) ............................................19

*U.S. Ethernet Innovs., LLC v. Cirrus Logic, Inc.*,
No. 12-cv-366, 2013 WL 8482270 (E.D. Tex. Mar. 6, 2013) ..............................25, 27, 28, 29

*U.S. Rest. Properties Operating L.P. v. Burger King Corp.*,
No. 02-cv-0730, 2003 WL 21448389 (N.D. Tex. June 16, 2003) ..........................................11

*United Pub. Workers v. Mitchell*,
330 U.S. 75 (1947)..................................................................................................................19

*Via Vadis v. Skype*,
No. 09-cv-234, 2012 WL 261367 (D. Del. Jan. 27, 2012) ....................................................22

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009)..............................................................................................23

*WesternGeco L.L.C. v. Ion Geophysical Corp.*,
No. 09-cv-1827, 2011 WL 3608382 (S.D. Tex. Aug. 16, 2011) ............................................16

*Whiddon v. Chase Home Fin., LLC*,
666 F. Supp. 2d 681 (E.D. Tex. 2009)....................................................................................17

*Worldwide Home Prods., Inc. v. Time, Inc.*,
No. 11-cv-3633, 2012 WL 6705876 (S.D.N.Y. Dec. 21, 2012)............................................25

*Xtria, LLC v. Tracking Sys., Inc.*,
No. 07-cv-0160, 2007 WL 1791252 (N.D. Tex. Jun. 21, 2007)............................................18

STATUTES

35 U.S.C. § 271(b) ..........................................................................................................2, 23, 24

35 U.S.C. § 271(c) ................................................................................................................2, 26

OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(2)................................................................................................................20

Fed. R. Civ. P. 12(b)(6)........................................................................................................12, 29

Local Patent Rule 3-1............................................................................................................29, 30

## I.      INTRODUCTION

In this case, Core Wireless has asserted patent infringement, breach of contract, and declaratory judgment claims.  As detailed below, however, none of those claims sets forth a valid basis upon which relief can be granted—even if the allegations set forth in the Complaint are accepted as true.

### A.      Breach Of Contract And Declaratory Judgment Counts

In Counts I-IV, Core Wireless asserts breach of contract and related declaratory judgment claims based on allegations that, in 2009, Apple allegedly breached a supposed contractual obligation to license a portfolio of approximately 1,200 patents that Nokia had unilaterally declared as essential to one or more wireless communications standards, and that Core Wireless now claims to own.  Those claims fail both procedurally and on the merits for four reasons.

*First*, under Texas law, a breach of contract claim is time-barred unless asserted within four years after the breach first occurs.  Here, Core Wireless alleges in its Complaint that Apple first breached its purported contractual obligations beginning in 2009—i.e., more than four years ago.  Therefore, the breach of contract claims and underlying declaratory judgment claims—first asserted in this case in 2014—justify dismissal on statute of limitations grounds.

*Second*, Core Wireless is already litigating the same breach of contract claims against Apple in *Core Wireless Licensing S.A.R.L. v. Apple, Inc.*, 6:12-cv-100-LED-JDL (E.D. Tex) ("*Core Wireless I*").  The rule against claim splitting bars Core Wireless from attempting to pursue the same claims here.

*Third*, the breach of contract claims and related declaratory judgment claims also justify dismissal because, even if accepted as true, they fail to identify a valid contractual obligation that

- 1 -

Apple could breach in the first instance.  Plainly, Core Wireless cannot proceed on a breach of contract theory absent an enforceable contractual obligation that Apple could breach.

*Fourth*, Core Wireless lacks standing to assert its declaratory judgment claims because those claims are entirely duplicative of its existing breach of contract claims—or, if not based on the contract claims, would constitute an improper request for an advisory opinion.

Accordingly, because Core Wireless has failed to plead any valid claim upon which relief can be granted, Counts I-IV justify dismissal in their entirety as a matter of law.

### B.    Claims For Patent Infringement

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court made clear that a complaint must plead ***specific facts*** establishing "a claim to relief that is plausible on its face."  Core Wireless falls far short of meeting that threshold pleading requirement for its claims alleging that Apple has directly, indirectly, and willfully infringed five patents that Core Wireless purchased from Nokia in 2011 (Counts V-IX).

*First*, the infringement allegations are so factually bare that Apple has no reasonable basis to identify even a single feature (in products containing thousands of features) that is accused of infringement.

*Second*, for its claims purporting to allege induced infringement under 35 U.S.C. § 271(b), Core Wireless fails even to allege all elements of an inducement claim, and for those elements it does allege, it pleads no supporting facts.

*Third*, for its claims purporting to allege contributory infringement under 35 U.S.C. § 271(c), Core Wireless merely states legal conclusions without pleading supporting facts.

*Finally*, for each patent infringement claim, the Complaint simply asserts—once again, without any specific supporting facts—that Apple's alleged infringement "has been and

- 2 -

continues to be willful."   Because those conclusory and factually unsupported assertions are insufficient to support a willfulness claim, they justify dismissal as a matter of law.

The pleading rules are designed to ensure that a plaintiff has some basis for its allegations and to put the defendant on reasonable notice of those allegations.   The conclusory patent infringement allegations contained in Core Wireless's complaint satisfy neither purpose.   Apple recognizes, however, that under the Local Patent Rules, Core Wireless will be required to provide infringement contentions that should—if properly prepared—provide at least some of the specificity now lacking in its Complaint.   Accordingly, if the Court would like to reserve a decision on this motion until after those contentions are served, Apple respectfully requests that the Court stay discovery until Core Wireless provides its infringement contentions, at which point Apple would provide the Court with notice whether it voluntarily withdraws its motion to dismiss with respect to the patent infringement claims or maintains part or all of the motion to the extent the contentions fail to cure the deficiencies in the Complaint.

## II.    ISSUES TO BE DECIDED

1.  Whether the breach of contract and declaratory judgment claims in Counts I-IV of the Complaint are barred by Texas's four-year statute of limitations for claims arising out of an alleged breach of contract;

2.  Whether the breach of contract and declaratory judgment claims in Counts I-IV of the Complaint are barred by the rule against claim splitting;

3.  Whether the breach of contract and declaratory judgment claims in Counts I-IV of the Complaint fail to state a claim upon which relief may be granted;

4.  Whether the Court has jurisdiction over the declaratory judgment claims in Counts III-IV of the Complaint;

5.  Whether the direct, indirect, and willful patent infringement claims in Counts V-IX of the Complaint fail to state a claim upon which relief may be granted.

## III.     BACKGROUND

Core Wireless filed its Complaint against Apple on September 10, 2014.   (Dkt. 1 [Compl.].)   The Complaint includes breach of contract claims, declaratory judgment claims arising out of its breach of contract claims, and patent infringement claims.

### A.     Core Wireless's Breach Of Contract And Declaratory Judgment Claims

#### 1.     Breach Of Contract Claims Previously Asserted In *Core Wireless I*

In February 2012, Core Wireless sued Apple in this Court, alleging that Apple infringed eight patents that Core Wireless had purchased from Nokia a few months earlier.   (*Core Wireless I* Dkt. 1 [Compl.].)[1]   Eighteen months later, Core Wireless brought several "counterclaims-in-reply" against Apple, including allegations that Apple had breached contractual obligations supposedly owed to the European Telecommunications Standards Institute ("ETSI") and Core Wireless—based on Apple's alleged refusal to license Core Wireless's entire portfolio of approximately 1,200 patents that Nokia declared essential to ETSI standards.   (*Core Wireless I* Dkt. 115 [Counterclaims-In-Reply], Counts I, II.)

In one count, Core Wireless alleged that Apple breached a contract between Apple and Core Wireless.   (*Id.* ¶ 19.)   The basis for that alleged contract consisted entirely of statements that Apple had made in an April 30, 2012 letter to Samsung in connection with other litigation. According to Core Wireless, that letter recognized a binding agreement between Apple and all "Standard Essential Patent owners to negotiate a FRAND royalty in good faith."   (*Id.* ¶¶ 15 n.3, 18.)   Core Wireless asserted that Apple breached that alleged agreement by "(1) [refusing] to negotiate a FRAND royalty with Core Wireless, (2) [refusing] to timely respond to Core

---

[1]   Through a series of amendments, Core Wireless ultimately asserted a total of fifteen patents against Apple.   (*Core Wireless I* Dkt. 10 [Amend. Compl.], Dkt. 18 [2d. Amend. Compl.], Dkt. 61 [3d Amend. Compl.].)   Core Wireless has since voluntarily dropped ten of those patents.

Wireless's FRAND royalty offer, and consequently (3) [refusing] to pay a FRAND royalty for Core Wireless's Standard Essential Patents."  (*Id.* ¶ 19.)

In a second count, Core Wireless alleged that Apple breached Section 3.2 of the ETSI Intellectual Property Rights ("IPR") Policy, which states under the heading "Policy Objectives":

> 3.2     IPR holders whether members of ETSI and their AFFILIATES or third parties, should be adequately and fairly rewarded for the use of their IPRs in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS.

(*Id.* ¶¶ 36, 38.)  Core Wireless claimed that Apple breached Section 3.2 as a result of its alleged "(1) refusal to negotiate a FRAND royalty with Core Wireless, (2) refusal to timely respond to Core Wireless's FRAND royalty offer, and (3) refusal to pay a FRAND royalty for Core Wireless's Standard Essential Patents."  (*Id.* ¶ 39.)

On May 1, 2013, the Court stayed the portfolio breach of contract claims asserted in *Core Wireless I*, until after a resolution of Core Wireless's patent infringement and contract claims with respect to the fourteen then-asserted patents.  (*Core Wireless I* Dkt. 209 [Order].)  A jury trial on those claims is scheduled for January 2015.  (*Core Wireless I*  Dkt. 302 [Order].)

### 2.     Duplicative Breach Of Contract Claims Asserted In This Case

In its Complaint in this case, Core Wireless has alleged the same portfolio breach of contract claims that it asserted in *Core Wireless I*—i.e., that the "Policy Objectives" section of the ETSI IPR Policy supposedly obligated Apple to license Core Wireless's entire portfolio of patents unilaterally declared as essential to ETSI standards, and that Apple breached supposed contractual obligations owed under that policy to both ETSI and to Core Wireless (as successor to Nokia) by refusing to take a license to those patents in 2009:

> Core Wireless is informed and believes that Nokia offered Apple a license to the patents-in-suit, and its other Standard-Essential Patents, on FRAND terms at least as early as 2009.  While Apple and Nokia agreed to a license for a subset of

Nokia's patents, Apple did not license the rest of Nokia's patents that are now owned by Core Wireless, including the patents-in-suit.

(Dkt. 1 [Compl.] ¶ 24; *id.* ¶ 19 ("Nokia also declared before ETSI that the over 1,200 Standard-Essential Patents owned by Core Wireless are essential to one or more of the mobile communications standards developed or completed by ETSI ….").)

Specifically, in Count I, Core Wireless alleges that "Apple's refusal for nearly five years to negotiate in good faith a FRAND rate for Core Wireless's patents-in-suit ***and its other Standard-Essential Patents*** is a violation of [Section 3.2 of] ETSI's IPR Policy." (*Id.* ¶¶ 21, 40 (emphasis added).)   In Count II, Core Wireless alleges that Apple "breached its contractual obligations to Core Wireless by unreasonably stalling negotiations for nearly five years and refusing to reasonably respond to Core Wireless's FRAND offer." (*Id.* ¶ 47.)  Moreover, just as in *Core Wireless I*, Core Wireless relies on statements that Apple made in its April 2012 letter to Samsung. (*Id.* ¶ 43 (alleging "Apple has taken the position that it is … licensed to those patents that have been declared essential to an ETSI standard" based on the April 2012 letter to Samsung.)[2]

In Counts III and IV, Core Wireless requests declaratory relief related to its two breach of contract claims.  In Count III, Core Wireless requests a declaratory judgment that "Apple is an unwilling licensee" based on Apple's alleged breach of contract. (*Id.* ¶¶ 50-57.)  And in Count IV, Core Wireless requests a declaratory judgment of a FRAND royalty rate for Core Wireless's portfolio of 1,200 patents. (*Id.* ¶¶ 59-62.)  Core Wireless sought similar relief in *Core Wireless I*

---

[2]  A copy of the April 30, 2012 letter referenced in paragraph 43 of the Complaint is attached to this motion as Exhibit A.

in connection with its breach of contract claims. [3]  (*Core Wireless I* Dkt. 115 [Counterclaims-In-Reply] ¶ J (seeking judgment that "Apple is not a willing licensee"); *id.* ¶ K (seeking "a determination of the FRAND royalty rate owed by Apple to Core Wireless").)

In its Complaint in this case, Core Wireless alleges an overlap between its portfolio breach of contract claims and the stayed contract claims asserted in *Core Wireless I*:

> Proceedings, including court rulings in [*Core Wireless I*] could have significant influence on this case.  The Court's knowledge of the technology and patents in [*Core Wireless I*] will assist the Court substantially in deciding issues in this case.

(*Id.* ¶ 3.)  The Complaint even refers to the parties' unsuccessful (and privileged) mediations in *Core Wireless I* as supposed evidence of Apple's alleged breaches in this case.  (*Id.* ¶¶ 28, 32.)

## B.      Core Wireless's Patent Infringement Claims

The Complaint accuses Apple of directly, indirectly, and willfully infringing five patents that Nokia unilaterally declared as essential to ETSI standards, and that Core Wireless now claims to own:  U.S. Patent Nos. 5,946,634 ("the '634 patent"), 6,477,151 ("the '151 patent"), 6,633,536 ("the '536 patent"), 7,782,818 ("the '818 patent"), and RE44,828 E ("the '828 patent").

***Direct infringement***:  For its allegations that Apple has directly infringed the asserted patents, Core Wireless merely includes a single generic sentence that it repeats for each patent:

> In violation of 35 U.S.C. § 271(a), Apple is and has been infringing one or more claims of the [asserted] patent directly by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, without authority, products, including without limitation Apple's Standard-Compliant Products, that are covered by or practice the inventions claimed in the [patents-in-

---

[3]   Core Wireless's "unwilling licensee" theories are substantively meritless and irrelevant to any issue that might be properly tried in *Core Wireless I* or in this case.  But for present purposes, the key point is that Core Wireless already advanced these same theories and claims in *Core Wireless I* and cannot do so again here.

suit].  Apple is infringing claims of the [asserted] patent literally and/or pursuant to the doctrine of equivalents.

(*Id.* ¶¶ 65, 77, 89, 101, 113.)  The Complaint defines "Apple's Standard-Compliant Products" as including seventeen Apple iPhone and iPad models (*id.* ¶ 22), each of which enables ***thousands of different features***.  But the Complaint does not identify ***a single feature*** that is supposedly essential to a standard or that underlies Core Wireless's infringement claims (information that is not readily apparent from the face of the patents either).

***Induced infringement***:  For its induced infringement claims, Core Wireless repeats the following two paragraphs, which do no more than recite the legal elements of induced infringement:

> In violation of 35 U.S.C. § 271(b), Apple is and has been infringing one or more of the [asserted] patent's claims indirectly by inducing the infringement of the [asserted] patent's claims by third parties, including without limitation manufacturers, resellers, and/or end users of Apple's Standard-Compliant Products, in this District, and elsewhere in the United States.  Direct infringement is the result of activities performed by third parties in relation to Apple's Standard-Compliant Products, including without limitation use of Apple's Standard-Compliant Products.

> Apple's affirmative acts of selling Apple's Standard-Compliant Products, causing Apple's Standard-Compliant Products to be manufactured and distributed, and providing instructive materials and information concerning operation and use of Apple's Standard-Compliant Products induced third parties to make or use Apple's Standard-Compliant Products in their normal and customary way to infringe the [asserted] patent's claims.  By manufacturing, distributing, and selling Apple's Standard-Compliant Products, Apple knowingly and specifically intends third parties to infringe the [asserted] patent's claims.  Apple knew of the [asserted] patent, Apple performed affirmative acts that constitute induced infringement, and Apple knew or should have known that those acts would induce actual infringement of one or more of the [asserted] patent's claims by third parties.

(*Id.* ¶¶ 66-67, 78-79, 90-91, 102-03, 114-15.)  Core Wireless does not identify a single fact in support of these barebones allegations.

***Contributory infringement***: Similarly, for its contributory infringement claims, Core Wireless includes three generic paragraphs reciting the legal elements of contributory infringement:

> In violation of 35 U.S.C. § 271(c), Apple is and has been infringing one or more of the [asserted] patent's claims indirectly by contributing to the infringement of the [asserted] patent's claims by third parties, including without limitation manufacturers, resellers, and/or end users of Apple's Standard-Compliant Products, in this District, and elsewhere in the United States. Direct infringement is the result of activities performed by third parties in relation to Apple's Standard-Compliant Products, including without limitation use of Apple's Standard-Compliant Products.
>
> Apple installs, configures, and sells its Standard-Compliant Products with distinct and separate hardware and/or software components especially made or especially adapted to practice the invention claimed in the [asserted] patent. That hardware and/or software is a material part of the invention. That hardware and/or software is not a staple article or commodity of commerce because it is specifically designed to perform the claimed functionality. Any other use of that hardware and/or software would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.
>
> A reasonable inference may be drawn from the facts set forth above that Apple is making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, without authority, a component of a patented machine, manufacture, combination or composition, or a material or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of a patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

(*Id.* ¶¶ 68-70, 80-82, 92-94, 104-06, 115-17.)  Again, Core Wireless does not identify a single fact supporting these conclusory allegations.

***Willful infringement***:  For each patent, Core Wireless also claims that Apple's alleged infringement was willful:  "Core Wireless is informed and believes that Apple's infringement of the [asserted] patent has been and continues to be willful entitling Core Wireless to increased damages."  (*Id.* ¶¶ 72, 84, 96, 108, 119.)  Core Wireless did not plead any specific facts in support of its willfulness allegations.

## IV.    ARGUMENT

As set forth below, Core Wireless's breach of contract and declaratory judgment claims are procedurally improper and substantively fail to identify an enforceable contract that Apple could breach in the first instance, and Core Wireless's patent infringement allegations are devoid of specific facts required to state a plausible claim for relief.

### A.    Core Wireless's Breach Of Contract And Declaratory Judgment Claims Justify Dismissal As A Matter of Law.

In Counts I-IV of its Complaint, Core Wireless purports to assert breach of contract and declaratory judgment claims resting on allegations that, nearly five years ago, Apple breached supposed contractual obligations to license—or negotiate in good faith to license—approximately 1,200 Nokia patents that Core Wireless now claims to own.  As detailed below, those claims justify dismissal as a matter of law because they are:  (1) time-barred under the statute of limitations; (2) precluded by the rule against claim splitting; and (3) not based on any valid contractual obligation in the first instance.  Further, Core Wireless's declaratory judgment claims additionally fail because they are duplicative of Core Wireless's other claims and seek an improper advisory opinion.

### 1.    The Statute Of Limitations Bars Core Wireless's Breach Of Contract And Declaratory Judgment Claims.

In its Complaint, Core Wireless repeatedly alleges that its breach of contract claims first accrued ***nearly five years ago*** in 2009:

> Apple's refusal for ***nearly five years*** to negotiate in good faith a FRAND rate for Core Wireless's patents-in-suit and its other Standard-Essential Patents is a violation of ETSI's IPR Policy.
>
> ***
>
> Apple has accordingly breached its contractual obligations to Core Wireless by unreasonably stalling negotiations for ***nearly five years*** and refusing to reasonably respond to Core Wireless's FRAND offer.
>
> ***

> For ***nearly five years*** Apple has demonstrated an unwillingness to negotiate a FRAND royalty rate with Nokia or Core Wireless in good faith by, among other things, unreasonably stalling negotiations and essentially ignoring Core Wireless's FRAND offer.

(Dkt. 1 [Compl.] ¶¶ 40, 47, 53 (emphases added); *id.* ¶ 24 ("Core Wireless is informed and believes that Nokia offered Apple a license to the patents-in-suit, and its other Standard-Essential Patents, on FRAND terms ***at least as early as 2009***. While Apple and Nokia agreed to a license for a subset of Nokia's patents, Apple did not license the rest of Nokia's patents that are now owned by Core Wireless, including the patents-in-suit." (emphasis added)).)

Under Texas law,[4] however, breach of contract claims are time-barred unless asserted ***within four years*** after the breach first occurs. *See Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) ("Texas applies a four-year statute of limitations to breach of contract claims.") (citing Tex. Civ. Prac. & Rem. Code § 16.051); *see also Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) ("It is well-settled law that a breach of contract claim accrues when the contract is breached."). Accordingly, because Core Wireless first asserted its breach of contract claims in this case "***nearly five years***" after Apple's alleged breach—i.e., after the four-year limitations period expired—Counts I-IV justify dismissal with prejudice as a matter of law. *See Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014) ("A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling."); *Kansa Reinsurance v. Congressional Mortg. Corp.*, 20 F.3d 1362, 1366-70 (5th Cir. 1994) (affirming dismissal under

---

[4] The statute of limitations is governed by Texas law, even if the underlying alleged contract is substantively governed by another jurisdiction's law. *See U.S. Rest. Properties Operating L.P. v. Burger King Corp.*, No. 02-cv-0730, 2003 WL 21448389, at *4 (N.D. Tex. June 16, 2003) ("Because this case is pending in a Texas court, and because Texas's choice-of-law rules treat the statute of limitations as procedural in nature, Texas's four-year statutes of limitations apply to the breach of contract and breach of fiduciary duty claims brought by Plaintiff.").

Rule 12(b)(6) of time-barred claim filed after the applicable limitations period).

Moreover, Core Wireless's declaratory judgment claims (Counts III and IV) rest on the same breach of contract theories.   (Dkt. 1 [Compl.] ¶ 57 (seeking declaration Apple is an "unwilling licensee" due to "Apple's refusal to negotiate in good faith as an unwilling licensee"); *id.* ¶ 59 (seeking declaration of FRAND royalty rate because Apple "is an unwilling licensee and has violated its contractual obligations to ETSI to negotiate for a license in good faith").)  Thus, the same four-year statute of limitations bars those claims.  *See Priester v. Long Beach Mortg. Co.*, No. 10-CV-641, 2011 WL 6116491, at *5 (E.D. Tex. Oct. 13, 2011) ("[T]to determine what statute of limitations should apply to an action for a declaratory judgment, one must look to the legal remedy underlying the cause of action.") (internal citation omitted); *Bailey v. Blanton*, 12-01-00191-CV, 2002 WL 1065941, at *2 (Tex. App. May 22, 2002) (not designated for publication) (applying 4-year period where "nearly all of the relief sought by Appellants stems from their allegations that Appellee failed to perform her obligations under the contract").

### 2.     The Rule Against Claim Splitting Bars Core Wireless's Breach Of Contract And Declaratory Judgment Claims.

The rule against claim splitting "prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action."  *Ameritox, Ltd. v. Aegis Sciences Corp.*, No. 08-cv-1168, 2009 WL 305874, at *4 (N.D. Tex. Feb. 9, 2009) (citation omitted).  Therefore, to promote judicial economy and protect defendants from unfairly having to litigate the same claim simultaneously on multiple fronts, "[t]he single action rule, also known as the rule against splitting claims, provides a plaintiff one indivisible cause of action for all damages arising from a defendant's single breach of a legal duty."  *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 646-47 (Tex. 2000); *see Schneider Nat'l. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 278 (Tex. 2004) (rule against claim splitting "advance[s] the interest[s] of the

litigants (who must pay for each suit), the courts (who must try each suit), and the public (who must provide jurors and administration for each suit)"); *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 629 (Tex. 1992) (the claim splitting rule "reflect[s] the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery").[5]

Core Wireless has alleged the same breach of contract claims in this case (Counts I-II) that it asserted, and ***still is litigating***, against Apple in *Core Wireless I*—i.e., both sets of claims involve the same alleged contracts, same legal theories, and same purported breach. For example, the complaints in both cases allege that:

- Section 3.2 of the ETSI IPR Policy required Apple to negotiate a license to Core Wireless's patent portfolio (*Core Wireless I* Dkt. 115 ¶¶ 36, 39; Dkt. 1 [Compl.] ¶¶ 21, 40);

- A contract obligating Apple to negotiate a license to Core Wireless's patent portfolio arose out of Apple's statements made in an unrelated litigation against Samsung (*Core Wireless I* Dkt. 115 ¶ 15 n.3; Dkt. 1 [Compl.] ¶¶ 43, 47); and

- Apple breached contractual commitments supposedly owed to Core Wireless and ETSI by refusing to take a license from Nokia in 2009, and by failing to negotiate a FRAND royalty (*Core Wireless I* Dkt. 115 ¶¶ 19, 21-24, 29, 39; Dkt. 1 [Compl.] ¶¶ 25-27, 40, 47).

Further, Core Wireless sought the same relief in *Core Wireless I* that it is seeking in its declaratory judgment claims (Counts III-IV) in this case. In Count III, Core Wireless asks the Court for a declaration that Apple is an "unwilling licensee" (Dkt. 1 [Compl.] ¶¶ 50-57), even though it asked the Court for the same relief in *Core Wireless I* (*Core Wireless I* Dkt. 115 ¶ J (seeking judgment that "Apple is not a willing licensee")). Similarly, in Count IV, Core Wireless seeks a declaration of a FRAND royalty rate (Dkt. 1 [Compl.] ¶¶ 59-62), just as it did in

---

[5] "[T]he substantive law of the state controls in determining whether a cause of action has been improperly split in diversity cases." *Hayes v. Solomon*, 597 F.2d 958, 982 (5th Cir. 1979). The Texas rule against claim splitting is "basically the same" as the Fifth Circuit's rule. *Id.*

*Core Wireless I* (*Core Wireless I* Dkt. 115 ¶ K (seeking "a determination of the FRAND royalty rate owed by Apple to Core Wireless")).   Therefore, Core Wireless has already made its broad portfolio claims in *Core Wireless I*—claims that necessarily embrace all the patents in this case. The rule against claim splitting prevents Core Wireless from attempting to reassert the same claims in this case.  *See Hogue v. Royse City*, 939 F.2d 1249, 1255 (5th Cir. 1991) ("Texas courts disapprove of claim-splitting: 'we believe it is well settled that a litigant may not ordinarily split his claim and have two trials on the same alleged breach of duty.'") (internal citation omitted); *Ameritox,* 2009 WL 305874, at *4-*5 (dismissing second claim because it "involves the same parties and arises out of the same transaction or series of transactions as the first claim"); *Antonini v. Harris Cnty. Appraisal Dist.*, 999 S.W.2d 608, 614-15 (Tex. App. 1999) (affirming dismissal with prejudice where "appellant's pleadings on his breach-of-contract claim in the first suit were identical to his breach-of-contract claim in this suit").[6]

### 3.    Core Wireless Has Failed To Plead The Existence Of An Enforceable Contractual Obligation That Apple Could Even Breach.

To allege a valid claim for breach of contract, a party must plead specific facts showing the existence of a valid, enforceable contract.  In this case, however, even if the allegations set forth in Counts I-IV are accepted as true, those allegations fail to establish the existence of a "valid, enforceable contract" that Apple could breach in the first instance.  *See Morse v. Commonwealth Land Title Ins. Co*., No. 12-cv-375, 2013 WL 5372395, at *11 (E.D. Tex. Sept.

---

[6] Of course, that the same contract claims have been pleaded in *Core Wireless I* does not mean they have any substantive merit.  The Court has stayed Apple's motion to dismiss those "portfolio" contract claims on substantive grounds in *Core Wireless I*, and to the extent that stay is ever lifted, Apple will renew its challenge to those claims.  Moreover, for the contract claims limited to the specific patents-in-suit asserted in *Core Wireless I* (which the Court has allowed to proceed), Apple expects to prevail at trial and/or in JMOL motion practice, and those rulings may separately bar Core Wireless's portfolio claims in both *Core Wireless I* and in this case.

25, 2013) (dismissing breach of contract claim where plaintiff failed to identify "the contract(s) at issue [and] the provisions breached").

In Count I, Core Wireless alleges breach based entirely on Section 3.2 of the ETSI IPR Policy (*id.* ¶ 21)—which appears in a section captioned "***Policy Objectives***," and merely states:

> 3.2     IPR holders whether members of ETSI and their AFFILIATES or third parties, should be adequately and fairly rewarded ***for the use of their IPRs*** in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS

(Dkt. 1-7 [IPR Policy] § 3.2 (emphasis added).)[7]  Core Wireless cannot create a contractual obligation to pay out of a mere "Policy Objective" that does not purport to impose ***any*** enforceable obligations at all, and that instead only states a goal that patent holders "should be adequately and fairly rewarded ***for the use***"—i.e., for actual infringement—of their intellectual property by others.   Because nothing in Section 3.2 suggests—much less ***contractually requires***—that ETSI members must negotiate or must take a license to every declared standard essential patent, without regard to actual essentiality or actual use, Count I should be dismissed as a matter of law for failure to state a claim upon which relief could be granted.  *See Tessler v. NBC Universal, Inc.*, No. 08-cv-234, 2009 WL 866834, at *6-*7 (E.D. Va. Mar. 31, 2009) (granting motion to dismiss where "Plaintiff's breach of contract claim is nothing more than a formulaic pleading and the facts alleged are inconsistent with, and contrary to, the existence of a valid contract").

A decision to the contrary would effectively mean that a first ETSI member can

---

[7]  Because Core Wireless attached the ETSI IPR Policy to its Complaint as an exhibit (Dkt. 1-7), the Court can consider the terms of that Policy in deciding this motion.  *See In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) ("[B]ecause the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss.").

*unilaterally* create a separate binding contract with every other ETSI member each time the first member *unilaterally* decides to declare a patent as essential to an ETSI standard, regardless of whether the patent *is actually essential* to the standard and *actually used* by the specific member. Core Wireless does not cite any legal precedent for that remarkable new theory of recovery— because there is none.  To the contrary, even Section 3.2 makes clear that its non-binding "objective" to secure "adequate" and "fair" compensation for its members is limited to instances involving actual "*use of their IPRs*" by others.  (Dkt. 1-7 [IPR Policy] § 3.2 (emphasis added).)[8]

In Count II, Core Wireless asserts that Apple "breached its contractual obligations to Core Wireless by unreasonably stalling negotiations for nearly five years and refusing to reasonably respond to Core Wireless's FRAND offer."  (*Id.* ¶ 47.)  But in support, Core Wireless does not identify any contract at all.  Rather, it merely refers to a "position" that Apple took in a letter to Samsung in a different case.  (*Id.* ¶ 43; Ex. A [4/30/12 Apple/Samsung Letter].)[9]

Core Wireless cannot plead the existence of an enforceable contract *between Apple and Core Wireless* by referencing statements that Apple made in a letter to Samsung—which did not mention Core Wireless or any of its patents, did not include any offer or acceptance of any contract terms, and contained no other indication that Apple intended for Apple and Core Wireless to be mutually bound in any way.  Moreover, the contract theory referenced in that

---

[8] Although Core Wireless asserts that its 1,200 patent portfolio has been "declared" essential (Dkt. 1 [Compl.] ¶ 14), Core Wireless does not—and cannot in good faith—allege that all 1,200 are *actually* essential, or that Apple uses all 1,200 patents in its products.

[9] Because Apple's letter is referenced in paragraph 43 of Core Wireless's Complaint, it may be considered as part of the pleadings for purposes of this motion to dismiss.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 ("[B]ecause the defendants attached the contracts to their motions to dismiss … we may consider the terms of the contracts in assessing the motions to dismiss"); *see also WesternGeco L.L.C. v. Ion Geophysical Corp.*, No. 09-cv-1827, 2011 WL 3608382, at *4 (S.D. Tex. Aug. 16, 2011) ("[A] court may refer to matters of public record when deciding a motion to dismiss") (internal citation omitted).

letter was rejected by the court in that case.  *See Apple Inc. v. Samsung Elecs. Co.*, No. 11–cv–01846, 2012 WL 1672493, at *13-*15 (N.D. Cal. May 14, 2012) ("[T]here is no existing license between Apple and Samsung because there was no firm offer and acceptance of the terms of the license that Apple claims already exists … Nor is it plausible that anyone who uses the technology has a preexisting license merely because an ETSI member submitted a FRAND declaration.").  And even taken on its own terms, that contract theory was always strictly limited to patents that are "actually valid, infringed and enforceable."  (Ex. A [4/30/12 Apple/Samsung Letter] at 1 ("As Apple has stated repeatedly, it is willing to pay FRAND royalties to Samsung *insofar as Samsung's declared-essential patents are actually valid, infringed, and enforceable*." (emphasis added).)  That is the opposite of what Core Wireless is now arguing—i.e., that contractual obligations to license (or negotiate a license) exist *independent of actual infringement, validity, and enforceability*.

Thus, because Count II fails to identify the existence of a valid contract between Apple and Core Wireless, that Count should be dismissed as a matter of law.  *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 692 (E.D. Tex. 2009) (dismissing breach of contract claims where plaintiff "never alludes to the formation of any contract between [plaintiff] and [defendant] … nor do the facts stated in his petition suggest that any of the elements required to create a binding contract are present").

> **4.    Core Wireless's Declaratory Judgment Claims Justify Dismissal For Lack Of Standing Under The Declaratory Judgment Act.**

To maintain a claim under the Declaratory Judgment Act, a plaintiff must establish standing by showing "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation omitted).

Core Wireless's declaratory judgment claims justify dismissal for lack of standing for at least two reasons.

**First,** Core Wireless's declaratory judgment claims are duplicative of other remedies that Core Wireless is already seeking.  For example, Core Wireless's request for a declaration that Apple is an "unwilling licensee" (Count III) effectively seeks a declaration that Apple is in breach of contract.  Core Wireless is already seeking the same relief in its breach of contract claims (Counts I and II).  (Dkt. 1 [Compl.] ¶¶ 34-48.)  *Xtria, LLC v. Tracking Sys., Inc.*, No. 07-cv-0160, 2007 WL 1791252, at *3 (N.D. Tex. Jun. 21, 2007) (dismissing claim seeking "a declaratory judgment to the same effect as [the existing] breach of contract claim"); *Household Fin. Servs., Inc. v. N. Trade Mortg. Corp.*, No. 99-cv-2840, 1999 WL 782072, at *3 (N.D. Ill. Sept. 27, 1999) (dismissing declaratory judgment claim where "Plaintiff does not request the court to clarify the parties' rights under the loan purchase agreement.  Rather, plaintiff requests a judicial declaration that defendant breached the agreement.").

Core Wireless's request for a FRAND royalty rate is similarly duplicative of what Core Wireless is seeking with its breach of contract claim.  (*E.g.* Dkt. 1 [Compl.] ¶¶ 41, 48.)  *See Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC*, No. 13-cv-2011, 2014 WL 3543720, at *4 (S.D. Tex. July 14, 2014) ("Courts in the Fifth Circuit regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the claims in the lawsuit."); *Microsoft Corp. v. Motorola, Inc.*, No. 10-cv-1823, 2011 WL 11480223, at *5-*6 (W.D. Wash. June 1, 2011) (dismissing claim for declaration of a RAND royalty rate that was duplicative of request for injunction that defendant make a RAND offer).

**Second,** if the Court finds that the declaratory judgment claims are not related to Core Wireless's breach of contract claims (and therefore not duplicative), the declaratory judgment

claims are improper requests for advisory opinions.  A party lacks standing to bring a declaratory judgment claim if it seeks an advisory opinion as to an "injury [that] is speculative and may never occur."  *In re Boyd Veigel, P.C.*, 575 F. App'x 393, 396 (5th Cir. 2014); *see also United Pub. Workers v. Mitchell*, 330 U.S. 75, 89 (1947) ("[F]ederal courts … do not render advisory opinions."). Yet, Counts III and IV, if decoupled from the contract claims, would do just that by asking the Court to declare that Apple is an unwilling licensee and to declare a FRAND royalty rate for Core Wireless's 1,200-patent portfolio of declared-essential patents—without any underlying liability theory.

Detached from any threshold finding of liability, Core Wireless's requests would be hypothetical and would need to be dismissed as a matter of law for lack of standing.  *See Transcience Corp. v. Big Time Toys, LLC*, No. 13-cv-6642, 2014 WL 4827878, at *11 (S.D.N.Y. Sept. 23, 2014) (dismissing declaratory judgment of contract damages in part because claim for relief "assumes liability has been established"); *see also Guttmacher Inst. v. McPherson*, 616 F. Supp. 195, 200 (S.D.N.Y. 1985) ("An advisory opinion constitutes a decision of law concerning a set of facts which are hypothetical or speculative, facts which do not now exist and whose existence is not imminent.").  Simply put, it is one thing to request such declarations as relief for infringement claims or contract claims; it is another to request such relief without any grounding in any liability theory.  *See InterDigital Communications, Inc. v. ZTE Corp*, No. 13–cv–00009, 2014 WL 2206218, at *3 (D. Del, May 28, 2014) (finding no jurisdiction over claim for declaratory judgment of a FRAND royalty rate because doing so "would have little utility and serve little to no useful purpose").

For these reasons, Core Wireless's declaratory judgment claims in Counts III and IV justify dismissal as a matter of law for lack of standing.

**B.      Core Wireless's Patent Infringement Claims Justify Dismissal.**

To state a valid claim, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief,"  Fed. R. Civ. P. 8(a)(2), and must allege *specific facts* in support of each such claim.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (finding that a "naked assertion" of wrongdoing without "factual enhancement" does not state a claim).  The purpose of this threshold pleading standard is twofold:  (1) to show that the plaintiff has some reasonable basis for its allegations; and (2) to put the defendant on "fair notice" of the claims at issue.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (explaining a complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests") (citation omitted).

In Counts V-IX, Core Wireless has alleged generic, boilerplate allegations of patent infringement that do not come close to meeting this threshold pleading standard.  Indeed, those allegations do not even identify the specific features accused of direct infringement, and Core Wireless's induced, contributory, and willful infringement claims merely parrot legal elements, without any specific supporting facts.  These insufficiently-pled claims justify dismissal as a matter of law.  *See Iqbal*, 556 U.S. at 678 (holding that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"); *Realtime Data, LLC v. Stanley,* 721 F. Supp. 2d 538, 543-45 (E.D. Tex. 2010) (Davis, J.) (granting motion to dismiss complaint alleging direct, indirect, and willful infringement claims for failure to allege sufficient facts supporting those claims).

1.     **Core Wireless's Patent Infringement Claims Fail To Plead Facts Sufficient To Put Apple On Notice Of Its Accused Infringement.**

For each asserted patent, Core Wireless alleges that "it is necessary to practice one or more of the claims of the [patent] to comply with the requirements of certain standards applicable to mobile communications," and that "Apple's Standard-Compliant Products comply with the applicable standards covered by the claims of the [patent] and therefore infringe the claims of the [patent]."  (Dkt. 1 [Compl.] ¶¶ 64, 76, 88, 100, 112.)  Critically, however, Core Wireless does not identify a single "applicable standard" or accused feature supposedly covered by the claims.[10]  And although Core Wireless defined "Apple's Standard-Complaint Products" as including seventeen different iPhone and iPad models (*id.* ¶22), each of those devices includes ***thousands of different features***.  Therefore, Apple lacks sufficient information to understand what is even accused of infringement in this case.

Without that required information, Apple cannot, for example, fully investigate and respond to Core Wireless's allegations that (1) the asserted patents are essential to any of the ***unspecified*** "applicable standards," or (2) the ***unspecified*** accused features are essential to one or more of those standards and/or infringe one or more patent claims.  *See Twombly*, 550 U.S. at 555 (holding a complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests") (citation omitted).

Accordingly, because Core Wireless has failed to plead facts sufficient to show that it has some reasonable basis for its patent infringement claims, and sufficient to provide Apple with "fair notice" of those claims, Counts V-IX justify dismissal as a matter of law for failure to state

---

[10]  This is in contrast to Core Wireless's complaint in *Core Wireless I*, which ***did*** identify specific sections of certain cellular standards that Core Wireless contended its patents covered.  (*E.g., Core Wireless I* Dkt. 1 [Compl.] ¶ 19.)  Apple did not move to dismiss those claims as set forth in that original complaint.

a claim upon which relief may be granted.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555;  *Select Retrieval, LLC v. Am. Apparel, LLC*, No. 11-cv-2158, 2012 U.S. Dist. LEXIS 40208, at *6-*8 (S.D. Cal. Mar. 23, 2012) (dismissing complaint for failure to "identif[y] specific parts of the websites alleged to infringe on the Patent; or if the entire websites are alleged to be infringing, specific ways in which the infringement is taking place" because "[w]ithout greater specificity at this point, the [complaint] would fall short of the example embodied in Form 18"); *Via Vadis v. Skype*, No. 09-cv-234, 2012 WL 261367, at *2 (D. Del. Jan. 27, 2012) (granting motion to dismiss where there were "no factual allegations advising Defendants how or why their products infringe"); *Realtime Data*, 721 F. Supp. 2d at 543 (granting motion to dismiss because the patentee's "vague reference to 'data compression products and/or services,' when asserting four patents with a multitude of claims, does not state a claim for relief that is plausible on its face"); *Bedrock Computer Techs., LLC v. Softlayer Techs., Inc.*, No. 09-cv-269, 2010 WL 5175172, at *3 (E.D. Tex. Mar. 29, 2010) (same); *Landmark Tech. v. Aeropostale*, No. 09-cv-262, 2010 WL 5174954, at *3-*4 (E.D. Tex. Mar. 29, 2010) (same).[11]

### 2.  Core Wireless's Induced Infringement Claims Are Boilerplate Allegations.

To state a claim for induced infringement, Core Wireless must allege specific facts

---

[11]  This lack of specificity is further compounded by Core Wireless's broad definition of "Apple Standard Compliant Products" to include *other unspecified* products as well.  (Dkt. 1 [Compl.] ¶ 22 (defining term to include "*without limitation*, Apple's devices marketed and sold within Apple's iPhone and iPad families, further including *without limitation* [seventeen iPhone and iPad models])" (emphasis added)); *id.* ¶¶ 65, 77, 89, 101, 113 (alleging infringement based on "products, including *without limitation* Apple's Standard-Compliant Products" (emphasis added)).)  These vague allegations separately justify dismissal of Core Wireless's patent infringement claims.  *See Round Rock Research, LLC v. Oracle Corp.*, No. 11-cv-332, 2011 WL 11761563, at *3 (E.D. Tex. Oct. 25, 2011) (dismissing infringement claims where "[p]laintiff's inclusion of the language 'including, but not limited to,' fails to inform Defendants of other products that might be accused of infringement").

showing that:  (1) Apple knew of the asserted patent; (2) Apple knowingly induced a third party to perform certain acts *with the specific intent* to induce the third party to directly infringe the patent; and (3) as a result of Apple's supposed inducement, the third party directly infringed the patent.  *See* 35 U.S.C. § 271(b); *Vita-Mix Corp. v. Basic Holding, Inc.,* 581 F.3d 1317, 1328 (Fed. Cir. 2009) ("Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.").

Core Wireless has failed to plead *specific facts* sufficient to support these elements of an inducement claim for at least three reasons.

*First,* Core Wireless generically alleges that Apple has induced "manufacturers, resellers, and/or end users" to infringe the asserted patents based on unspecified "activities performed by third parties" and by using Apple's iPhone and iPad products "in their normal and customary way to infringe the [patent] claims."  (Dkt. 1 [Compl.] ¶¶ 67, 79, 91, 103, 115.)  Again, however, these conclusory statements merely parrot the legal elements, without pleading any facts identifying a single specific third party, a single specific "activity," or a single specific "normal and customary way" to use Apple's products in an allegedly infringing manner.

Accordingly, because Core Wireless has failed to allege facts showing "why or how" these unidentified third parties are allegedly direct infringers, its inducement claims justify dismissal.  *See Air Vent, Inc. v. Owens Corning Corp.*, No. 10-cv-1699, 2011 WL 2601043, at *4 (W.D. Pa. June 30, 2011) (dismissing inducement claims that did "not aver any facts as to why or how … purchasers or users would be direct infringers"); *Clear With Computers, LLC v. Bergdorf Goodman, Inc.*, No. 09-cv-481, 2010 WL 3155888, at *4 (E.D. Tex. Mar. 29, 2010) (dismissing inducement claim where plaintiff failed to identify a direct infringer).

- 23 -

***Second***, the Supreme Court and Federal Circuit have repeatedly held that, to satisfy the specific intent prong of an inducement claim, a patentee must prove that the accused infringer specifically intended to cause a third party to infringe—i.e., that the defendant affirmatively intended to cause infringement, and not just the induced acts.  *See Global-Tech. Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) ("[I]nduced infringement under [35 U.S.C.] § 271(b) requires knowledge that the induced acts constitute patent infringement."); *DSU Med. Corp. v. JMS Co., Ltd.,* 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[T]he intent requirement for inducement requires more than just intent to cause the acts that produce direct infringement.  Beyond that threshold knowledge, ***the inducer must have an affirmative intent to cause direct infringement***.") (emphasis added).

Core Wireless misstates this requirement in its Complaint by alleging that "Apple performed affirmative acts that constitute induced infringement, and Apple knew ***or should have known*** that those acts would induce actual infringement of one or more of the [asserted] claims by third parties."  (Dkt. 1 [Compl.] ¶¶ 67, 79, 91, 103, 115.)  The Supreme Court has held that "induced infringement under § 271(b) ***requires knowledge*** that the induced acts constitute patent infringement," and has specifically rejected a "should have known" standard.  *Global-Tech*, 131 S. Ct. at 2068.

Core Wireless then compounds that legal error by relying on boilerplate statements of the legal standard, without pleading any facts that Apple specifically intended to cause others to infringe:  "By manufacturing, distributing, and selling Apple's Standard-Compliant Products, Apple knowingly and specifically intends third parties to infringe the [asserted] patent's claims."  (Dkt. 1 [Compl.] ¶¶ 67, 79, 91, 103, 115.)  This naked assertion of specific intent cannot properly support an inducement claim.  *See Superior Indus., LLC v. Thor Global Enters. Ltd.,* 700 F.3d

1287, 1296 (Fed. Cir. 2012) (affirming dismissal of inducement claim because "[plaintiff] does not allege any facts to support a reasonable inference that [Defendant] specifically intended to induce infringement of the [asserted patent] or that it knew it had induced acts that constitute infringement"); *Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*, No. 14-cv-502, 2014 WL 3345618, at *2-*3 (D.N.J. July 7, 2014) (dismissing inducement allegations with prejudice where plaintiff "fail[ed] to 'satisfy the rigorous standard of demonstrating that [Defendants] had a specific intent to encourage infringement'"); *Tierra Intellectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, No. 13-cv-38, 2014 WL 894805, at *7 (E.D. Tex. Mar. 4, 2014) (granting motion to dismiss inducement claim where allegations "[did] not support an inference of specific intent to induce infringement"); *U.S. Ethernet Innovs., LLC v. Cirrus Logic, Inc.*, No. 12-cv-366, 2013 WL 8482270, at *4 (E.D. Tex. Mar. 6, 2013) (dismissing inducement allegations where complaint "fails to … allege any facts that … [defendant] had the specific intent to induce its customers actions, and knowledge that those actions amounted to infringement"); *Worldwide Home Prods., Inc. v. Time, Inc.*, No. 11-cv-3633, 2012 WL 6705876, at *3, (S.D.N.Y. Dec. 21, 2012) (dismissing inducement claim because "[t]he Complaint fail[ed] to plead facts showing that [Defendant] acted with the requisite culpable state of mind").

In sum, Core Wireless has failed to plead facts sufficient to support any element of an induced infringement claim.  That failure justifies dismissal of those claims as a matter of law. *See Artemi Ltd. v. Safe-Strap Co.*, 947 F. Supp. 2d 473, 481 (D.N.J. 2013) (dismissing inducement claims where plaintiff pled no facts in support of claim); *Realtime Data*, 721 F. Supp. 2d at 544 (dismissing inducement allegation because the complaint's "generalities … fail[] to inform Defendants as to how they must defend against charges of indirect infringement"); *EnLink Geoenergy Services, Inc. v. Jackson & Sons Drilling & Pump, Inc.*, No. 09-cv-03524,

2010 WL 1221861, at *2 (N.D. Cal. Mar. 24, 2010) (dismissing inducement claims where "complaint merely repeats the exact language from the statute without adding any factual allegations").

### 3. Core Wireless's Generic Contributory Infringement Claims Justify Dismissal.

To state a valid claim for contributory infringement, Core Wireless must allege factual support to show that:  (1) Apple had pre-suit knowledge of the asserted patent; (2) Apple knew that the accused products constitute a "material part of the [claimed] invention" and have "no substantial non-infringing uses"; (3) Apple knew the accused products were "especially made or especially adapted" to infringe the asserted patents; and (4) that one or more third parties used the accused products to directly infringe the patents.  35 U.S.C. § 271(c); *i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 850-51 (Fed. Cir. 2010), *aff'd*, 131 S. Ct. 2238 (2011) ("A party is liable for contributory infringement if that party sells, or offers to sell, a material or apparatus for use in practicing a patented process.  That 'material or apparatus' must be a material part of the invention, have no substantial noninfringing uses, and be known (by the party) 'to be especially made or especially adapted for use in an infringement of such patent.'").

For several reasons, Core Wireless has failed to plead sufficient facts.

*First*, Core Wireless does not allege *any specific facts* to support its broad allegations that Apple's accused iPhones and iPads include "distinct and separate hardware and/or software components" that are supposedly "especially made or especially adapted to practice the invention claimed in the [asserted] patent" and are "not a staple article or commodity of commerce suitable for substantial noninfringing use."  (Dkt. 1 [Compl.] ¶¶ 69-70, 81-82, 92-93, 105-06, 116-17.)  It does not plead any facts showing that Apple sells a component that is a "material part of the

[purported] invention" and is "not a staple article or commodity of commerce suitable for substantial noninfringing use", or that Apple had knowledge of such facts.

Such generalized, conclusory assertions are insufficient as a matter of law to support a claim for contributory infringement. *See Superior Indus.,* 700 F.3d at 1296  (affirming dismissal of contributory infringement claim where plaintiff failed to allege facts that the accused products were "especially made or especially adapted for use in an infringement"); *Straight Path,* 2014 WL 3345618, at *3-*4 (dismissing contributory infringement claims where "Plaintiff has not shown that Defendants 'knew that the Accused Products were especially made or especially adapted to infringe the Asserted Patents'"); *3D Sys., Inc. v. Formlabs, Inc*., No. 13-cv-7973, 2014 WL 1904365, at *6 (S.D.N.Y. May 12, 2014) (dismissing contributory infringement claim that consisted of "a barebones recitation that the [accused product] was 'especially made or especially adapted' for an infringing use and that it has 'no substantial noninfringing uses'" and offered "no facts or allegations … that plausibly support an inference that there are no substantial noninfringing uses of the [accused product]"); *U.S. Ethernet Innovs.*, 2013 WL 8482270, at *4 (dismissing contributory infringement claims where "the complaint is devoid of any allegation from which the Court can plausibly infer that any components being sold have 'no substantial noninfringing uses'"); *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc*., No. 11-cv-229, 2012 WL 9864381, at *5 (E.D. Tex. July 27, 2012) (dismissing contributory infringement claim that "fails to identify the components used in the infringing method and is devoid of any allegation from which the Court can plausibly infer that any components being sold have 'no substantial non-infringing uses'").

**Second**, Core Wireless alleges that "[d]irect infringement is the result of activities performed by third parties in relation to Apple's Standard-Compliant Products, including without

limitation use of Apple's Standard-Compliant Products."  (Dkt. 1 [Compl.] ¶¶ 68, 80, 91, 104, 115.)  Just as with its inducement claims, however, this generic allegation fails to plead any facts sufficient to identify these (unnamed) "third parties" or (unspecified) "activities" that supposedly resulted in (unidentified) acts of direct infringement.   This too justifies dismissal of Core Wireless's contributory infringement claims.  *See Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 09-cv-446, 2010 WL 2026627, at *3 (E.D. Tex. May 6, 2010) (dismissing contributory infringement claim where "Eolas has not alleged a direct infringer in relation to its indirect infringement claims"); *Air Vent, Inc.*, 2011 WL 2601043, at *6 (dismissing contributory infringement claim where "there are simply no factual averments to explain or support why … purchasers or users would be direct infringers").

### 4.        Core Wireless's Willful Infringement Claims Are Conclusory.

To state a claim for willful infringement, Core Wireless must specifically allege facts showing that:  (1) Apple "acted despite an objectively high likelihood that its action constituted infringement of a valid patent"; and (2) "this objectively-defined risk … was either known or so obvious that it should have been known to [Apple]."  *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007); *U.S. Ethernet Innovs.*, 2013 WL 8482270, at *3 (explaining claims for "willful infringement must be judged by the pleading standards articulated in *Twombly* and *Iqbal*"); *see also Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1368 (Fed. Cir. 2006) ("[T]he patentee bears the burden of persuasion and must prove willful infringement by clear and convincing evidence.").

Despite that stringent burden of proof, Core Wireless's willfulness allegations consist of a single conclusory sentence repeated for each patent:  "Core Wireless is informed and believes that Apple's infringement of the [patent] has been and continues to be willful entitling Core

Wireless to increased damages….”  (Dkt. 1 [Compl.] ¶¶ 72, 84, 96, 108, 119.)  Critically, the Complaint does not plead ***any facts*** about (1) whether there was an objectively high risk that Apple was infringing a valid patent, or (2) that Apple knew or should have known of such a risk.

Accordingly, Core Wireless’s claims for willful infringement justify dismissal as a matter of law as well.  *See*, *e.g.*, *ReefEdge Networks, LLC v. Juniper Networks, Inc.*, No. 13-cv-412, 2014 WL 1217263, at *2-*3 (D. Del. Mar. 21, 2014) (dismissing willful infringement claim because “[plaintiff] has not pled sufficient facts to successfully allege [defendant’s] pre-suit knowledge of the patents-in-suit or that [plaintiff] knowingly acted with an objectively high likelihood of infringement”); *U.S. Ethernet Innovs.*, 2013 WL 8482270, at *5 (dismissing willfulness allegation where the complaint “only makes the conclusory assertion that [defendant] had knowledge of the asserted patents and continued to infringe”); *Achates Reference Pub., Inc. v. Symantec Corp.*, No. 11-cv-294, 2013 WL 693955, at *3 (E.D. Tex. Jan. 10, 2013) (dismissing “bare assertion” of willful infringement as “not sufficient to plead a plausible claim for relief”); *InMotion Imagery Techs. v. Brain Damage Films*, No. 11-cv-414, 2012 WL 3283371, at *4 (E.D. Tex. Aug. 10, 2012) (same).

     **5.**     **Alternatively, If The Court Wishes To Reserve Judgment On This Motion Until Core Wireless Serves Its Infringement Contentions Under Local Patent Rule 3-1, Apple Respectively Asks The Court To Stay Discovery In The Interim.**

For the reasons above, the patent infringement claims in Counts V-IX of the  Complaint justify dismissal under Fed. R. Civ. P. 12(b)(6) because they fail to plead sufficient facts to support the asserted claims for direct, induced, contributory or willful infringement.  But Apple recognizes that, under Local Patent Rule 3-1, Core Wireless will be obligated to make a “Disclosure of Asserted Claims and Infringement Contentions,” which if properly prepared, should provide at least some of the specificity lacking in the Complaint.  Accordingly, if the

Court would like to reserve a decision on this motion until after those contentions are served, Apple respectfully requests that the Court stay discovery until Core Wireless provides its infringement contentions, at which point Apple would provide the Court with notice whether it voluntarily withdraws its motion to dismiss with respect to the patent infringement claims or maintains part or all of the motion to the extent the contentions fail to cure the deficiencies that are detailed above.

## V.    CONCLUSION

For the reasons set forth above, Apple respectfully requests that the Court (a) dismiss the breach-of-contract and declaratory-judgment claims in Counts I-IV of the Complaint, and (b) dismiss the patent infringement claims in Counts V-IX of the Complaint, or alternatively, reserve judgment on this motion until Core Wireless serves its Local Patent Rule 3-1 disclosures and stay discovery in the interim.

Dated:  November 17, 2014

*/s/ Joseph J. Mueller*
Joseph J. Mueller
(Massachusetts Bar No. 647567)
WILMER CUTLER PICKERING HALE
   AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
joseph. mueller@wilmerhale.com

Eric Miller Albritton
ALBRITTON LAW FIRM
111 West Tyler Street
Longview, TX 75601
(903) 757-8449
ema@emafirm.com

*Attorneys for Defendant Apple Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was served on all counsel of record via electronic mail in accordance with Local Rule CV-5(a)(7)(C).

Dated:  November 17, 2014

*/s/ Joseph J. Mueller*
Joseph J. Mueller
